[No. H028333. Sixth Dist. Dec. 20, 2005.]

DARREN STEWART, Plaintiff and Appellant, v.
PRESTON PIPELINE INC., et al., Defendants and Respondents.

## Counsel

Law Offices of Scott Seabaugh and Scott Seabaugh for Plaintiff and Appellant.

Fortune, Drevlow, O'Sullivan & Hudson and William S. Caspari for Defendants and Respondents.

## Opinion

**DUFFY, J.**—As an encouragement to the open communication essential to successful settlement discussions, the Evidence Code, and in particular Evidence Code section 1119[1] makes inadmissible any statements, writings, or other communications made in connection with mediation. We consider here whether this broad mediation confidentiality statute may be used by a settling party as a shield to prevent the admission of a purported settlement document signed at the conclusion of mediation in subsequent proceedings to enforce the settlement.

Plaintiff Darren Stewart sued as a result of personal injuries he sustained when his vehicle collided with a backhoe that fell off a truck owned by defendant Preston Pipeline Inc., and driven by defendant George Solinger (collectively, defendants). The dispute proceeded to mediation. At the conclusion of the mediation, a document—signed by plaintiff, plaintiff's attorney, and defendants' attorney—purported to memorialize a settlement and recited

---

[1] All further statutory references are to the Evidence Code unless otherwise stated.

that the parties intended the settlement to be enforceable and exempt from certain confidentiality provisions of the Evidence Code. Plaintiff thereafter refused to accept the settlement check. Defendants brought alternative motions to enforce the settlement and for summary judgment under Code of Civil Procedure sections 664.6 and 437c, respectively. The court granted the latter motion and entered judgment in defendants' favor.

On appeal, plaintiff contends that the settlement agreement that was the basis for the court's summary judgment order was both inadmissible under section 1119 and unenforceable because it was not signed by all of the parties litigant. He cites *Levy v. Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*), which held that a written settlement agreement not signed by all settling litigants could not be enforced under the summary procedure specified in Code of Civil Procedure section 664.6. Plaintiff also argues that, assuming the agreement was admissible and enforceable, he was entitled to a trial on whether there was mutual consent, or (assuming there was mutual consent) whether he could rescind the agreement.

We hold that the settlement agreement was admissible under section 1123 (a statutory exception to mediation confidentiality) and was not rendered unenforceable as a result of its not having been signed personally by each of the parties. We conclude further that there was no triable issue of material fact that the parties settled the dispute. Because the trial court properly granted summary judgment, we will affirm.

## PROCEDURAL HISTORY AND RELEVANT FACTS

On December 12, 2003, plaintiff filed a complaint against defendants for damages arising out of an accident occurring on September 30, 2003. Defendants answered by filing a general denial. The parties participated in a mediation proceeding on June 23, 2004. The mediation was attended by plaintiff, Dennis O'Brien (plaintiff's then attorney), Thomas LemMon (defendants' attorney), and Helen Kong (a claims adjuster with Zurich American Insurance Company, defendants' insurer).

At the conclusion of the mediation, a document captioned "Confirmation of Settlement As A Result Of Mediation" (settlement agreement or agreement)[2] was signed by plaintiff, his attorney (O'Brien), and defendants' attorney (LemMon). The agreement provided that "[t]he plaintiff(s) and the defendant(s) herein agree that they have reached a full and final settlement of all

---

[2] We refer to the document at the heart of this controversy by the shorthand terms "settlement agreement" or "agreement." In so doing, we do not mean to imply that the document, without the analysis contained in this opinion, is ipso facto a binding, admissible written agreement of settlement.

claims." The concluding paragraph read: "The parties intend that this settlement is enforceable pursuant to the provisions of Code of Civil Procedure Section 664.6; the parties agree that this Confirmation of Settlement is exempt from the confidentiality provisions of Evidence Code Section 1152, et seq."

Thereafter, LemMon forwarded to O'Brien the settlement check, along with a proposed written agreement of settlement. Plaintiff refused to accept the settlement check tendered by defendants, asserting by letter (through new counsel, Scott Seabaugh) that "[t]here is no settlement of this matter." The next day, Seabaugh again wrote to LemMon, stating that he did "not believe that there was an agreement, enforceable or not, reached at the mediation. In any event, . . . Mr. Stewart elects to rescind any settlement agreement" defendants alleged to have existed.

Defendants moved to amend their answer to allege additional affirmative defenses that the parties had agreed to settle the dispute. Over plaintiff's opposition and request for sanctions, the court granted the motion to amend. Plaintiff then moved to strike the portion of the amended answer that concerned the alleged settlement; the court denied that motion. Defendants moved to confirm the settlement under Code of Civil Procedure section 664.6; in the alternative, defendants moved for summary judgment pursuant to Code of Civil Procedure section 437c. Plaintiff opposed both motions, contending, inter alia, that the settlement agreement was inadmissible under section 1119 and was unenforceable. The court overruled plaintiff's evidentiary objection, denied the motion to enforce settlement, and granted the motion for summary judgment.

Judgment was entered on December 3, 2004.[3] Plaintiff filed a timely notice of appeal, and the matter is a proper subject for appellate review. (Code Civ. Proc., § 437c, subd. (m)(1); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2005) ¶ 10:384, p. 10-122.12.)

## DISCUSSION

### I. *Issues on Appeal*

Plaintiff challenges the three orders from the underlying judgment, namely, the orders granting leave to amend the answer, denying plaintiff's motion to

[3] Certain documents, including the judgment and portions of defendants' motion for summary judgment, were not designated by the parties and were therefore not part of the clerk's transcript. On our own motion, however, we ordered that the record be augmented to include these omitted documents. (Cal. Rules of Court, rule 12(a)(1)(A).)

strike portions of the answer, and granting summary judgment.[4] While he makes several arguments, the thrust of plaintiff's appeal is that it was error to grant summary judgment based upon the settlement agreement, because it was (1) a mediation communication, inadmissible under section 1119, and (2) not a binding settlement agreement. Alternatively, plaintiff contends that, assuming arguendo the settlement agreement was admissible and a potentially binding settlement document, summary judgment was nonetheless improper. He asserts that there was a triable issue as to whether there was mutual consent; assuming mutual consent, there was nonetheless a triable issue as to whether he could rescind the agreement.

After discussing the applicable standard of review, we will address these claims of error.

## II. *Standard of Review*

As we have acknowledged, "[c]onstruction and application of a statute involve questions of law, which require independent review." (*Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 711 [49 Cal.Rptr.2d 722]; see also *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1428 [129 Cal.Rptr.2d 41] [construction and application of Code Civ. Proc., § 664.6 primarily questions of law].) Likewise, since summary judgment motions involve purely questions of law, we review the granting of summary judgment de novo. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145] [de novo review of "whether a triable issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law"]; *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 [111 Cal.Rptr.2d 534].)

As will be evident from our discussion, *post*, the primary issues here concern the interpretation and application of sections 1119 and 1123 with respect to the admissibility of the settlement agreement (see pts. III. and IV., *post*), matters for our independent review. And our consideration of whether there were triable issues of material fact that made summary judgment inappropriate (see pt. V., *post*) is similarly governed by a de novo standard of review.

---

[4] Plaintiff makes virtually the same argument concerning the three court orders: that it was error for the court to consider the settlement agreement because it was a mediation communication. Our conclusion, *post*, that the agreement was admissible in connection with defendants' summary judgment motion due to the parties' waiver of mediation-confidentiality rights necessarily disposes of plaintiff's claims of error concerning the court's allowance of the amended answer.

### III. *Whether Settlement Agreement Was Admissible*

Plaintiff contends that the mediation confidentiality provisions of section 1119 precluded introduction of the settlement agreement as evidence in support of defendants' summary judgment motion. He asserts that these confidentiality rights are absolute and that there were no applicable statutory exceptions—and, in particular, that the exception prescribed under section 1123 did not apply. We review sections 1119 and 1123 *post* and conclude that plaintiff's argument as to the inadmissibility of the settlement agreement cannot be sustained.

### A. *Mediation Confidentiality Under the Evidence Code*[5]

█ The mediation provisions of the Evidence Code, commencing with section 1115, were enacted in 1997. (Stats. 1997, ch. 772, § 3.)[6] Section 1115, subdivision (a) defines "mediation" broadly as "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (See also Code Civ. Proc., § 1775.1, subd. (a) [containing same definition of "mediation" for pilot project for civil mediation in civil actions in Los Angeles County].) The Evidence Code provisions, including those addressing confidentiality, are applicable to all mediation proceedings, except for court-supervised settlement conferences (under Cal. Rules of Court, rule 222), family conciliation proceedings (Fam. Code, § 1800 et seq.), and mediation of visitation and custody issues (Fam. Code, § 3160 et seq.). (§ 1117, subd. (a).)

Section 1119 provides: "Except as otherwise provided in this chapter: [¶] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (b) No writing, as defined in Section 250, that is

---

[5] Practitioners and the courts sometimes refer to the confidentiality afforded by statute to communications made in connection with mediation as a "mediation privilege." (See, e.g., *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 13 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*) [Supreme Court concurs with Court of Appeal's determination that "parties had also expressly reserved all mediation privileges"]; *Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 356 [134 Cal.Rptr.2d 716] [trial court found an implied waiver of "mediation privilege in Evidence Code section 1115 et seq."].) Since the Evidence Code does not use the term "privilege," we will use "mediation confidentiality" in our discussion of the statutory provisions rendering communications made in connection with mediation confidential.

[6] The genesis of section 1115 et seq. was former section 1152.5, which was enacted in 1985. (Stats. 1985, ch. 731, § 1, p. 2379; see also fn. 15, *post*.)

prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery . . . . [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." In addition, section 1121 provides that a mediator's reports and findings are confidential,[7] and section 1126 extends application of mediation confidentiality temporally after the end of mediation proceedings.[8]

■ The rule of exclusion of mediation communications is tempered by section 1120. That statute provides that evidence that is otherwise admissible or discoverable outside of the mediation arena is not inadmissible or privileged simply because it is used or introduced during mediation.[9] In addition, sections 1122 through 1124 provide for the admissibility of certain mediation communications if particular requirements are met.[10]

---

[7] "Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise in writing, or orally in accordance with Section 1118." (§ 1121.)

[8] "Anything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends." (§ 1126.)

[9] "(a) Evidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation. [¶] (b) This chapter does not limit any of the following: [¶] (1) The admissibility of an agreement to mediate a dispute. [¶] (2) The effect of an agreement not to take a default or an agreement to extend the time within which to act or refrain from acting in a pending civil action. [¶] (3) Disclosure of the mere fact that a mediator has served, is serving, will serve, or was contacted about serving as a mediator in a dispute." (§ 1120.)

[10] Section 1122, subdivision (a), provides for the admissibility of mediation communications or writings where "[a]ll persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing[, or] [¶] . . . [t]he communication, document, or writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation." Section 1123—discussed at length in part III.C., *post*—makes settlement agreements arising out of mediation admissible under certain conditions. And section 1124 provides for the admissibility of oral agreements if the "agreement is in accordance with Section 1118[,] [¶] . . . [it] is in accordance with subdivisions (a), (b), and (d) of Section 1118, and all parties to the agreement expressly agree, in writing or orally in accordance with Section 1118, to disclosure of the agreement[, or] [¶] . . . [it] is in accordance with subdivisions (a), (b), and (d) of Section 1118, and the agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

"[S]ection 1119 serves an important public purpose in promoting the settlement of legal disputes through confidential mediation." (*Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 167 [74 Cal.Rptr.2d 464].) Mediation confidentiality encourages the frank exchange of information in order to encourage settlement. (*Foxgate, supra*, 26 Cal.4th at p. 14; *Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 271 [11 Cal.Rptr.3d 610].) Section 1119 is a rule of mediation confidentiality that "sweeps broadly." (*Eisendrath v. Superior Court, supra*, 109 Cal.App.4th at p. 364.)[11] And as our high court recently reiterated, there are no exceptions to mediation confidentiality under section 1115 et seq., except those expressed by statute. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 416, 422 [15 Cal.Rptr.3d 643, 93 P.3d 260] (*Rojas*); see also *Eisendrath v. Superior Court, supra*, at p. 362 [no implied waiver of § 1119 mediation confidentiality].)

## B. *The Foxgate and Rojas Decisions*

The Supreme Court in *Foxgate* and *Rojas* rejected attempts to introduce into evidence mediation communications where confidentiality rights were asserted and not waived. Plaintiff contends that these two decisions offer strong support for his view that the settlement agreement here was inadmissible under section 1119.[12]

In *Foxgate, supra*, 26 Cal.4th 1, after mediation proved unsuccessful in complex construction litigation, the plaintiff filed a motion for substantial sanctions against the developer defendants and their counsel under Code of Civil Procedure section 128.5, based upon their alleged failure to mediate in

---

[11] Some commentators have criticized the breadth of mediation confidentiality created by the Evidence Code. (See, e.g., Scallen, *Relational and Informational Privileges and the Case of the Mysterious Mediation Privilege* (2004) 38 Loyola L.A. L.Rev. 537, 592 ["[t]here has been, however, no showing that it is necessary to create an 'absolute' privilege (more absolute than any other existing privilege) in order for parties to engage in mediation"]; Comment, *Absolute Mediation Privilege: Promoting or Destroying Mediation by Rewarding Sharp Practice and Driving Away Smart Lawyers?* (2004) 25 Whittier L.Rev. 617, 619, fn. omitted ["mediation privilege was never intended by the Legislature to be absolute, no matter how fervently proponents of absolute mediation privilege may argue"].)

[12] The judiciary on occasion is confronted with the question of the extent to which mediation confidentiality may preclude the admission into evidence of settlement agreements for the purpose of enforcing those agreements. In some instances, courts have found it unnecessary to decide those questions. (See, e.g., *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 819, fn. 6 [71 Cal.Rptr.2d 265] [court "need not entertain the Evidence Code section 1152.5 issue (concerning admissibility of mediation communications) further"]; *Murphy v. Padilla, supra*, 42 Cal.App.4th 707, 710 [because agreement not enforceable under Code Civ. Proc., § 664.6, court declines consideration of the extent to which "oral or written agreements made during the course of mediation are admissible to prove settlement without offending Evidence Code section 1152.5"].)

good faith. (*Foxgate, supra,* at pp. 4–5.) The motion was based in part upon a mediator's report that detailed the mediation conduct of developers and their counsel. (*Id.* at pp. 6–7.) After the motion was denied without prejudice and renewed (*id.* at p. 7), the developers opposed the motion. (*Id.* at p. 8.) They argued that various materials in the motion—a mediator's report, and a declaration of the plaintiff's counsel containing purported statements of the developers' attorney and a recitation of events occurring during mediation— were inadmissible mediation communications. (*Ibid.*) The court granted the sanctions motion. (*Ibid.*)

Finding that the language of sections 1119 and 1121 was "clear and unambiguous" (*Foxgate, supra,* 26 Cal.4th at pp. 11, 14), the high court held that "judicial construction of the statutes is not permitted unless they cannot be applied according to their terms or doing so would lead to absurd results, thereby violating the presumed intent of the Legislature." (*Id.* at p. 14.) Because the clear legislative intent underlying mediation confidentiality was to promote candor in the informal exchange of information in the mediation proceedings (*ibid.*), the court concluded that sections 1119 and 1121 "unqualifiedly bar[red] disclosure of communications made during mediation absent express statutory exception." (*Foxgate, supra,* at p. 15, fn. omitted.) The *Foxgate* court therefore concluded that the plaintiff's motion for sanctions violated the mediation confidentiality statutes (§§ 1119 and 1121), and that the trial court had erred in admitting that evidence. (*Foxgate, supra,* at pp. 17–18; see also *Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131 [24 Cal.Rptr.3d 751] [issuance of "valuation order" purporting to establish settlement value of claims, thereby precluding insurers from declaring coverage forfeiture if insureds settled without insurers' consent, exceeded powers of mediator and violated mediation-confidentiality statutes].)

*Foxgate* is distinguishable. There, the high court concluded that permitting evidence of a mediator's report and communications made in mediation— even for the salutary goal of preventing bad faith conduct—would be antithetical to the purpose of mediation confidentiality, i.e., to ensure open communication. In this instance, that objective would not be promoted by applying confidentiality statutes to prevent one settling party from enforcing a settlement agreement signed by the party allegedly reneging on the settlement.

In *Foxgate,* significantly, the parties asserting evidentiary objections to mediation conduct and communications had not waived mediation confidentiality. The high court specifically noted this fact in distinguishing the case before it from *Olam v. Congress Mortg. Co.* (N.D.Cal. 1999) 68 F.Supp.2d

1110,[13] a case relied on by the *Foxgate* plaintiff. (*Foxgate, supra,* 26 Cal.4th at pp. 16–17.) Here, as discussed in part III.C., *post,* the parties—plaintiff (both personally and through his attorney) and defendants (through their counsel)—waived mediation confidentiality.

In *Rojas, supra,* 33 Cal.4th 407, 412, the court addressed the scope of section 1119, where the parties to a prior action stipulated that reports and photographs were protected from disclosure by mediation confidentiality. In a subsequent action brought by several hundred apartment-complex tenants alleging damages relating to toxic mold problems, the plaintiffs sought discovery of the mediation materials. (*Ibid.*) After the trial court sustained mediation-confidentiality objections to the discovery (*id.* at pp. 413–414), the Court of Appeal granted mandamus; it concluded "that section 1119 does 'not protect pure evidence,' but protects only 'the substance of mediation, i.e., the negotiations, communications, admissions, and discussions designed to reach a resolution of the dispute at hand.' " (*Id.* at p. 414.) The appellate court applied the work product doctrine to mediation materials and concluded that (1) data, photographs, and statements of witnesses were " 'non-derivative' " and not privileged, (2) matter that solely reflected impressions, research and conclusions of counsel were absolutely privileged, and (3) " 'derivative material'—that is, 'amalgamation[s] of factual information and attorney thoughts, impressions, [and] conclusions,' such as 'charts and diagrams' " expert reports, appraisals, etc.—was subject to a qualified privilege (i.e., discoverable only upon a good-cause showing). (*Id.* at p. 414.)

The Supreme Court reversed, holding that the appellate court's decision conflicted with the plain language of sections 1119 and 250 (defining the term "writing" broadly). (*Rojas, supra,* 33 Cal.4th at p. 416.) The high court concluded that such "writings" as "photographs, videotapes, witness statements, and 'raw test data' " were—contrary to the Court of Appeal's view—covered by the mediation-confidentiality provisions of section 1119 to the extent that they were " 'prepared for the purpose of, in the course of, or pursuant to, [the] mediation' in the underlying action." (33 Cal.4th at pp. 422–423.) The court also held that there was no "good cause" exception

---

[13] In *Olam v. Congress Mortg. Co., supra,* 68 F.Supp.2d 1110, the district court wrestled with a difficult question: whether a mediator could be compelled to testify (over his presumed objection but without opposition by any party) regarding the circumstances of a lengthy mediation session, where that evidence was important to evaluating and adjudicating a contention by one settling party that she did not understand or consent to settlement terms recited in a memorandum signed by the parties at the mediation's conclusion. The court stated that, although it had "no occasion or power to quarrel with these generally applicable pronouncements of state policy [concerning the importance of upholding mediation confidentiality under section 1115 et seq. to encourage full participation in the mediation process], . . . they appear to have appreciably less force when, as here, the parties to the mediation have waived confidentiality protections." (*Id.* at p. 1133.)

resulting in the qualified admissibility of derivative material prepared in connection with mediation. (*Id.* at p. 423.) It reasoned: "[T]he Legislature clearly knows how to establish a 'good cause' exception to a protection or privilege if it so desires [e.g., the discovery of attorney work product under Code of Civil Procedure section 2018]. The Legislature did not enact such an exception when it passed Evidence Code section 1119 and the other mediation confidentiality provisions." (*Ibid.*)

*Rojas* is also distinguishable. It involved the question of whether photographs, expert reports, and other materials prepared in connection with mediation were subject to mediation confidentiality under section 1119. Unlike the present case, the materials did not include an alleged settlement agreement that one side sought to enforce. And unlike the case before us, the parties in *Rojas* who objected to discovery of the materials had not waived mediation confidentiality.

### C. Whether the Parties Waived Mediation Confidentiality

Defendants contend that the court below correctly determined that the agreement was admissible under section 1123, an exception to section 1119. Section 1123 provides: "A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied: [¶] (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect. [¶] (b) The agreement provides that it is enforceable or binding or words to that effect. [¶] (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure. [¶] (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

We consider whether the settlement agreement contained appropriate language to waive mediation confidentiality and determine whether the requirement in section 1123 that the agreement be "signed by the settling parties" necessarily restricts execution to the parties themselves (as opposed to a more expansive reading that would include the parties *or* their attorneys).

#### 1. Waiver language in settlement agreement

■ On its face, the settlement agreement here met at least two of the alternative requirements of the section 1123 exception to mediation confidentiality. The agreement provided that "the parties agree that this Confirmation of Settlement is exempt from the confidentiality provisions of Evidence Code Section 1152, et seq." This language satisfied the requirement that the

agreement provide "that it is admissible or subject to disclosure, or words to that effect." (§ 1123, subd. (a).) We interpret the plain meaning of the statute's language ("or words to that effect") as contemplating that the parties need not precisely state that the agreement is admissible or subject to disclosure so long as the same import can be inferred from the words used. (See *State v. Deffebaugh* (2004) 277 Kan. 720 [89 P.3d 582, 585–586] [statute defining "alibi as 'evidence to the effect that [the accused] was at some other place at the time of the crime charged' " indicated legislative intent not to limit type of evidence that could be introduced for that purpose]; *Realty Shop, Inc. v. RR Westminster Holding* (Tenn. 1999) 7 S.W.3d 581, 602 [statute making enforceable contract language that prohibited oral waivers where contractual provision was " 'to the effect that no waiver' " of contract would be valid unless it was in writing denoted legislative intent that contractual provision need not contain precise language of statute].)[14] For the same reason, the parties' reference in the agreement to "the confidentiality provisions of Evidence Code Section 1152, et seq." presents no impediment to concluding that the parties intended to make the agreement "admissible or subject to disclosure" (§ 1123, subd. (a)). We do not deem the reference to "Section 1152, et seq." to be words of limitation, such that the agreement should be construed as confidential in one context but nonconfidential in others.[15]

In addition, the settlement agreement stated that it was "a full and final settlement of all claims" and that "[t]he parties intend that this settlement is enforceable pursuant to the provisions of Code of Civil Procedure [s]ection 664.6." It therefore satisfied the requirement that "[t]he agreement provide[] that it is enforceable or binding or words to that effect." (§ 1123, subd. (b); see also Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2005 supp.) foll. § 1123, p. 190 [subd. (b) was added in 1997 "due to the

---

[14] See also Webster's 3d New International Dictionary (1993) page 724, column 3 ("effect . . . to the effect: with the meaning (speculations *to the effect* that Shakespeare did the grand tour—D. W. Brogan) (his comments about the incident were less coherent but *to the same effect*)"); 1 Compact Edition of the Oxford English Dictionary (1971) page 834 ("effect: . . . 2. a. A contemplated result, a purpose; chiefly in phrases, *To this* or *that effect, to the effect that.* b. In the same phrases: Purport; drift, tenor, essential significance").

[15] While the matter is not completely free of doubt, we surmise that the parties' reference in the agreement to "the confidentiality provisions of Evidence Code Section 1152, *et seq.*" (italics added) was to the general proscription against the admissibility of settlement offers to compromise and offers to discount claims under section 1152 and 1154, respectively, *and* to the inadmissibility of communications during mediation under former section 1152.5 (the precursor to the current mediation statutes). That former code section—which included broad language paralleling the current statute protecting the confidentiality of any communications made in the course of mediation, or documents prepared for the purpose of, in the course of, or pursuant to mediation (see former § 1152.5, subd. (a)(1)–(3))—was repealed in 1997 (Stats. 1997, ch. 772, § 5) and replaced with a new chapter in the Evidence Code at section 1115 et seq.

likelihood that parties intending to be bound will use words to that effect [i.e., to the effect that the agreement is 'enforceable or binding'], rather than saying their agreement is intended to be admissible or subject to disclosure [under § 1123, subd. (a)]"].) Again, the fact that the parties stated that the agreement was "enforceable pursuant to the provisions of Code of Civil Procedure [s]ection 664.6" should not be construed as words of limitation; it would make little sense that the parties wished their agreement to be enforceable under Code of Civil Procedure section 664.6 only, but that it would otherwise be unenforceable.[16]

### 2. *Section 1123's "signed by the parties" requirement*

Plaintiff's chief contention is that because the settlement agreement was not signed by the defendants themselves or by their insurance carrier—but instead was signed only by defense counsel—it did not meet the requirements of section 1123 that the waiver be "signed by the settling parties." (§ 1123.) Plaintiff relies principally on *Levy, supra,* 10 Cal.4th 578 [41 Cal. Rptr.2d 878, 896 P.2d 171]—a case that was *not* decided under the mediation statutes—in support of his position. We conclude that *Levy* does not compel the conclusion that section 1123 requires that an effective mediation-confidentiality waiver be signed personally by the litigants.

### a. *Levy v. Superior Court*

In *Levy,* the Supreme Court considered whether Code of Civil Procedure section 664.6[17]—requiring that the "parties" enter into a stipulation for an out-of-court settlement—meant that the *litigants themselves* (and not simply their attorneys) were required to sign the stipulation. (*Levy, supra,* 10 Cal.4th

---

[16] The Supreme Court has granted review of a case decided by the First District (Division Two). (*Fair v. Bakhtiari* (2004) 122 Cal.App.4th 1457 [19 Cal.Rptr.3d 591] (review granted Jan.12, 2005, S129220.) *Fair* concerned the admissibility of a settlement agreement (which included an arbitration clause) entered into after two days of mediation. In response to a petition to compel arbitration under the agreement, the opposing party objected to admission of the agreement under section 1119. The trial court sustained this evidentiary objection and denied the petition to compel, concluding that the settlement document was inadmissible because the agreement did not contain specific language to the effect that the parties had waived mediation confidentiality as required by section 1123. We anticipate that *Fair* will decide the legal effect of a provision requiring arbitration of any disputes arising out of the settlement agreement, namely, whether such a provision satisfied the requirement under section 1123, subdivision (b), that the agreement state that "it is enforceable or binding or words to that effect."

[17] "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Code Civ. Proc., § 664.6.)

at p. 580.) After extended analysis, the court held that, in the context of motions to enforce settlements brought under Code of Civil Procedure section 664.6, because a settlement stipulation affects the client's substantial rights, "in providing for an enforcement mechanism for settlements by 'parties,' the Legislature intended the term to literally mean the litigants personally." (*Levy*, *supra*, at p. 584; see also *id.* at p. 586.)

*Levy* is distinguishable on at least three grounds. First, the case was decided under Code of Civil Procedure section 664.6, not under the mediation statutes.

Second, in *Levy*, it was the nonsignatory party litigant who challenged his attorney's authority to sign the stipulation as a prerequisite to enforcing the settlement under Code of Civil Procedure section 664.6. Here, plaintiff *did* personally sign the settlement agreement (as did his attorney); he claims that the agreement is unenforceable because defendants and their insurer did not personally sign the agreement. This distinction is of some consequence because *neither defendants nor their insurer challenged defense counsel's authority to sign the stipulation on their behalf.*

Third, and perhaps most importantly, *Levy*'s holding was based upon the fact that the client's right affected by his attorney's stipulation (i.e., settlement of a dispute) was substantial. The court acknowledged that "[t]he word 'parties' is reasonably susceptible of more than one interpretation" (*Levy*, *supra*, 10 Cal.4th at p. 582), and in many contexts, "parties" is understood to refer not only to the litigant but also to his or her counsel. (*Id.* at p. 583.)[18] In evaluating whether "party" refers to the litigant or his or her counsel, or, alternatively, is given the more narrow reading of party litigant only, the *Levy* court made a distinction between stipulations that are " 'necessary or incidental to the management of the suit' " (*Levy, supra*, at p. 584), and those that "implicate[] a substantial right of the litigants themselves." (*Ibid.*) The court concluded that, since the decision to settle is one affecting the substantial rights of the client, it is one that, in the context of written stipulations signed by the "parties" enforceable under Code of Civil Procedure section 664.6, required the party litigant's personal signature. (*Levy, supra*, at p. 584.)

---

[18] Thus, many procedural steps taken in litigation may be performed by the "party," in the sense that the term refers to the litigant *or* his or her attorney. (See, e.g., Code Civ. Proc., § 430.30, subd. (c) ["party" who objects to complaint or cross-complaint may simultaneously demur and answer]; Code Civ. Proc., § 437c, subd. (a) ["[a]ny party may move for summary judgment in any action or proceeding"]; Code Civ. Proc., § 2017.010 ["any party may obtain discovery regarding any matter, not privileged, that is relevant" to action's subject matter].) "Motions under these particular statutes are routinely made by attorneys in the course of representing their clients." (*Levy, supra*, 10 Cal.4th at p. 583; see also Code Civ. Proc., § 283 [attorney may take action to bind client "in any of the steps of an action or proceeding by [the attorney's] agreement filed with the Clerk, or entered upon the minutes of the Court"].)

### b. *Confidentiality waiver is procedural*

Our analysis of the authorities leads us to conclude that there is no "bright line" between these two kinds of stipulations—often identified as agreements involving "procedural matters" versus ones affecting "substantial rights." (See *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403–405 [212 Cal.Rptr. 151, 696 P.2d 645] (*Blanton*).)[19] We believe therefore that further review of the kinds of stipulations that courts have determined to fall on one side or the other is useful to our resolution of this matter.

█ Matters concerning the authority of the attorney to bind the client through stipulation or agreement generally are "governed by the principles of agency." (*Blanton, supra*, 38 Cal.3d at p. 403.) Therefore, "[t]he attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . [Citations.] . . . 'In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client.' " (*Linsk v. Linsk* (1969) 70 Cal.2d 272, 276–277 [74 Cal.Rptr. 544, 449 P.2d 760], fn. omitted (*Linsk*).)

█ Thus, an attorney may bind his or her client with respect to procedural matters by entering into stipulations or taking other action such as (1) stipulating to the use of a witness's prior-trial testimony in a subsequent action (*Smith v. Whittier* (1892) 95 Cal. 279, 287–289 [30 P. 529]); (2) making the tactical decision (as plaintiff's counsel) to exonerate a codefendant, because it was the best opportunity "to fortify potential recovery from the other" defendant (*Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 607 [94 Cal.Rptr. 200]); (3) abandoning a nonmeritorious defense (*Duffy v. Griffith Co.* (1962) 206 Cal.App.2d 780, 793 [24 Cal.Rptr. 161]); (4) refusing to call a witness notwithstanding the client's contrary wishes (*Nahhas v. Pacific Greyhound Lines* (1961) 192 Cal.App.2d 145, 146 [13 Cal.Rptr. 299]); (5) stipulating to a trial judge's view of the premises (*Lachman Bros. v. Muenzer* (1956) 143 Cal.App.2d 520, 525 [300 P.2d 295]); (6) stipulating that a witness, if called, would offer the same testimony as another witness who already testified (*Newman v. Los*

---

[19] See *City of Fresno v. Baboian* (1975) 52 Cal.App.3d 753, 757 [125 Cal.Rptr. 332]: "The rules delineating the extent of an attorney's authority are not altogether clear and concise." (See also *Blanton, supra*, 38 Cal.3d at pp. 409–412 (conc. opn. of Bird, C. J.).)

*Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 695 [262 P.2d 95]); and (7) stipulating to the prosecution's due diligence in attempting to locate a witness and the use of the unavailable witness's preliminary examination testimony (*People v. Hanna* (1939) 36 Cal.App.2d 333, 336 [97 P.2d 847]).

By contrast, there are other stipulations or actions taken in a lawsuit that must be viewed as "impair[ing] the client's substantial rights or the cause of action itself." (*Linsk, supra,* 70 Cal.2d at p. 276.) In those instances, there is no implicit authority conferred upon counsel simply by virtue of the attorney-client relationship (*Blanton, supra,* 38 Cal.3d at p. 405), and the attorney's agreement or action is valid only with his or her client's express authorization or agreement. (*Linsk, supra,* 70 Cal.2d at pp. 278–279.)[20]

Examples of litigation actions affecting the client's substantial rights include stipulations (1) to the settlement of a lawsuit (*Levy, supra,* 10 Cal.4th at p. 583); (2) to binding arbitration and the consequent waiver of "all but minimal judicial review" (*Blanton, supra,* 38 Cal.3d at p. 407; see also *Lazarus v. Titmus* (1998) 64 Cal.App.4th 1242, 1249 [75 Cal.Rptr.2d 676]); (3) to the waiver of trial testimony and the submission of the case to a judge based on testimony given before a different judge in prior proceedings ending in a mistrial (*Linsk, supra,* 70 Cal.2d at pp. 278–279); (4) to the conveyance of the client's property to his spouse in a dissolution proceeding (*Woerner v. Woerner* (1915) 171 Cal. 298, 299 [152 P. 919]); (5) to the dismissal of the client's complaint (*Whittier Union High Sch. Dist. v. Superior Court* (1977) 66 Cal.App.3d 504, 507–508 [136 Cal.Rptr. 86]) or cross-complaint (*Bowden v. Green* (1982) 128 Cal.App.3d 65, 73–74 [180 Cal.Rptr. 90]); (6) to the entry of summary judgment against the client (*Roscoe Moss Co. v. Roggero* (1966) 246 Cal.App.2d 781, 786–787 [54 Cal.Rptr. 911]); (7) to the fact that the employer's premises constituted an unsafe workplace, thereby disposing of the workers' compensation insurer's sole interest in the litigation, i.e., its lien rights (*Harness v. Pacific Curtainwall Co.* (1965) 235 Cal.App.2d 485, 491 [45 Cal.Rptr. 454]); (8) to the entry of a default judgment (*Ross v. Ross* (1953) 120 Cal.App.2d 70, 74 [260 P.2d 652]); and (9) to the elimination of a client's essential defense (*Fresno City High School Dist. v. Dillon* (1939) 34 Cal.App.2d 636, 646–647 [94 P.2d 86]).

■ We conclude from a review of the foregoing authorities that a stipulation waiving mediation confidentiality is not one that impacts the substantial rights of the party litigant. The circumstances before us bear little resemblance to those presented in *Levy*. Such a mediation-confidentiality

---

[20] Of course, an attorney's unauthorized actions may be binding on his or her client where the client ratifies them. (*Fidelity & Casualty Co. v. Abraham* (1945) 70 Cal.App.2d 776, 783 [161 P.2d 689].)

waiver—as contrasted with a settlement stipulation as addressed in *Levy*—is clearly procedural in nature; it is a strategic stipulation allowing for the admissibility of certain evidence. (See, e.g., *Hillman v. Stults* (1968) 263 Cal.App.2d 848, 879 [70 Cal.Rptr. 295] ["attorney may stipulate to include or limit issues or defenses to be tried"]; *People v. Leyva* (1960) 187 Cal.App.2d 249, 254 [9 Cal.Rptr. 469] [stipulation to admit prior conviction of client within scope of attorney's authority]; *Morgan v. Morgan* (1956) 139 Cal.App.2d 704, 705 [294 P.2d 45] [stipulation to admit probation officers' reports concerning child within authority of counsel].) The waiver is not a decision that "involve[s] [a] matter[] of judgment which extend[s] beyond technical competence so that any client would be expected to share in the making of [it]." (*Blanton, supra*, 38 Cal.3d at p. 405.) Rather, it is a stipulation which is " 'simply necessary or incidental to the management of the suit, and which affect[s] only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client.' " (*Linsk, supra*, 70 Cal.2d at p. 277.)

To hold otherwise would exalt form over substance and would allow mediation confidentiality to nullify otherwise valid settlements agreed upon through mediation. (See *Regents of University of California v. Sumner* (1996) 42 Cal.App.4th 1209, 1213 [50 Cal.Rptr.2d 200]: "No valid purpose would be served here by misinterpreting section 1152.5 to bar introduction of evidence regarding the settlement agreed to by the parties.") We must not lose sight of the fact that "California has a strong policy encouraging settlements" (*Levy, supra*, 10 Cal.4th at p. 592), and that mediation provides a process to assist litigants "in reaching a mutually acceptable agreement" resolving their dispute. (§ 1115; see also *Doe 1 v. Superior Court* (2005) 132 Cal.App.4th 1160, 1165 [34 Cal.Rptr.3d 248] [there is "strong policy favoring mediation as an alternative to litigation . . . [and] it is in the public interest to encourage [the] use [of mediation]"].) Were we to adopt plaintiff's position, then (in an extreme example) a settlement agreement signed personally by the parties after mediation would be inadmissible in a subsequent motion or action enforcing that settlement, if the parties' counsel (as opposed to the parties themselves) signed the mediation-confidentiality waiver. We do not believe that the Legislature intended to permit the tail (mediation confidentiality) to wag the dog (agreed-upon settlement) in such instances.

We therefore hold that the requirement in section 1123 that the written settlement agreement be "signed by the settling parties" does not require that an effective mediation-confidentiality waiver be signed by each of the parties litigant, so long as that written waiver is signed by each of the settling parties *or* their respective counsel. The trial court thus correctly

held—overruling plaintiff's evidentiary objection—that the settlement agreement here was admissible because the settling parties had waived mediation confidentiality.[21]

## IV. *Whether the Settlement Agreement Was Enforceable*

Plaintiff contends that even if the settlement agreement was admissible (notwithstanding the mediation confidentiality provisions of section 1119), it was nonetheless unenforceable. He makes an argument similar to that made concerning mediation confidentiality: that under *Levy, supra,* 10 Cal.4th 578, the agreement was unenforceable because it was not signed by each of the parties litigant. He argues boldly that "[e]ven the trial court acknowledged [this] deficiency" by its denial of defendants' motion to confirm settlement under Code of Civil Procedure section 664.6. His position is without merit.

*Levy* does not stand for the proposition that a settlement agreement is unenforceable per se, simply because it is executed by fewer than all of the parties litigant. Instead, that case held merely that, in order for an out-of-court settlement agreement to be enforceable through a Code of Civil Procedure section 664.6 motion, the agreement necessarily must be signed personally by each of the settling parties. (*Levy, supra,* 10 Cal.4th at p. 584.) The high court expressly left open the possibility that the agreement could be enforced under settlement-enforcement procedures *alternative to* the expedited procedure of Code of Civil Procedure section 664.6, such as by a motion for summary judgment, a separate suit in equity, or an amendment of the pleadings. (*Levy, supra,* 10 Cal.4th at p. 586, fn. 5; see also *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1122 [127 Cal.Rptr.2d 370]; *Davidson v. Superior Court* (1999) 70 Cal.App.4th 514, 518 [82 Cal.Rptr.2d 739] [acknowledging existence of "other more cumbersome methods to enforce the settlement"].) Indeed, as the court below recognized, it is indisputable that, although a settlement may not meet the procedural requirements of enforceability under Code of Civil Procedure section 664.6, it may nonetheless be enforceable by alternative methods. (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 306 [87 Cal.Rptr.2d 822]; *Murphy v. Padilla, supra,* 42 Cal.App.4th 707, 716.)[22]

---

[21] We acknowledge that our holding presents something of an anomaly. On the one hand, the agreement here, to the extent that it memorialized the parties' settlement, "affected substantial rights of the client." (*Blanton, supra,* 38 Cal.3d at p. 407.) Therefore, in order for the settlement to be enforceable pursuant to the expedited motion procedure of Code of Civil Procedure section 664.6, the agreement necessarily must have been signed by each of the settling parties litigant. (*Levy, supra,* 10 Cal.4th at p. 584.) But the same agreement, to the extent that its last paragraph contained a waiver of mediation confidentiality, impacted only procedural rights; hence, for purposes of such confidentiality waiver, the agreement was effective if signed by each of the settling parties *or* their counsel.

[22] For the same reason, we reject plaintiff's claim that *Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700 [45 Cal.Rptr.2d 740] (*Johnson*), compels the conclusion that the

The fact that the settlement agreement here was not signed personally by defendants does not render it per se unenforceable. The court below, rather than concluding that the agreement was "deficient," as plaintiff claims, properly held that the agreement did not meet the requirements of Code of Civil Procedure section 664.6. But it correctly held that the agreement could be considered in connection with defendants' alternative motion for summary judgment.

## V. *The Propriety of Granting Summary Judgment*

It remains for us to decide plaintiff's last claim of error. He contends that even if the court correctly found that the agreement was admissible and enforceable, it nonetheless erred by granting summary judgment. Plaintiff asserts that the following alternative issues of material fact precluded the granting of the motion: (1) whether there was mutual consent; or (2) even if there was mutual consent, whether plaintiff could rescind the agreement.

Defendants' amended answer contained affirmative defenses alleging that plaintiff's action was barred by the settlement agreement. Defendants argued in the summary judgment motion that they had established the right to judgment based upon the agreement alleged in two affirmative defenses.[23] As the parties moving for summary judgment, defendants had the "burden of showing that a cause of action ha[d] no merit . . . [by demonstrating] that . . . there [was] a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)

▆ "A settlement agreement is a contract, and the legal principles [that] apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th 793, 810.) Its validity is thus "judged by the same legal principles applicable to contracts generally." (*Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1128 [131 Cal.Rptr.2d 387]; see also *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441].) Defendants therefore had the burden of establishing each contractual element—parties who are capable of entering into contract, their mutual

---

settlement agreement was unenforceable because it was not signed by all of the parties litigant. In *Johnson,* the court (following *Levy, supra,* 10 Cal.4th 578) held that an oral stipulation for settlement recited in court that was not personally agreed to by the plaintiff did not satisfy the "parties" requirement under Code of Civil Procedure section 664.6 to permit summary enforcement of the settlement under that statute. (*Johnson, supra,* at pp. 1707–1708.) The court in *Johnson* did not hold that a settlement agreement is per se unenforceable if it is not executed personally by all parties.

[23] As discussed in part IV., *ante,* this summary judgment procedure was a proper means of seeking to enforce the claimed settlement. (*Murphy v. Padilla, supra,* 42 Cal.App.4th at p. 716.)

consent, a lawful object, and sufficient cause or consideration (Civ. Code, § 1550; *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 53 [67 Cal.Rptr.2d 850])—in support of their motion.

Here, the settlement agreement itself demonstrated each element of the contract. It identified the parties, facially evidenced mutual consent, had a lawful object of resolving litigation, and contained mutual promises (sufficient consideration).[24] Further, execution of the agreement by defense counsel was authorized by defendants' insurer. (See *Murphy v. Padilla, supra,* 42 Cal.App.4th at pp. 716–717 [enforcement of settlement through means other than Code Civ. Proc., § 664.6 motion may be appropriate if nonsignatory litigant authorized her attorney to bind her to settlement].) Defendants thus met their initial burden under Code of Civil Procedure section 437c, subdivision (p)(2), of establishing "that undisputed facts support[ed] *each element* of the affirmative defense' [citations]." (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289 [85 Cal.Rptr.2d 331].)

Once defendants met their burden under Code of Civil Procedure section 437c, subdivision (p)(2), "the burden shift[ed] to the plaintiff . . . to show that a triable issue of one or more material facts exist[ed] as to that cause of action or a defense thereto. The plaintiff . . . [could] not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exist[ed] but, instead, [was required to] set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2); see also *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72 [78 Cal.Rptr.2d 16, 960 P.2d 1046].)

In opposing defendants' alternative motions, plaintiff asserted that he did not read the settlement agreement before signing it, he "did not understand what the document meant or what the terms, conditions or consequences were . . . [, and] only signed the document because [his] attorney told [him] to do so." He claimed that (1) there was no mutual consent and (2) there was

---

[24] In his opposition to the motion—repeated on appeal—plaintiff asserted without any support that "[t]he alleged agreement vaguely set[] forth terms and conditions of a settlement." The settlement agreement recited, inter alia, that the parties "have reached a full and final settlement of all claims"; the insurer will pay plaintiff $54,200; plaintiff "accepts said sum as full settlement of all claims"; "[p]laintiff is responsible for payment of all of plaintiff's attorney's fees and all of plaintiff's medical liens and bills"; and defense counsel "will prepare a Release of All Claims form and a Request for Dismissal of the entire action with prejudice" to be sent to plaintiff's attorney. We see nothing vague about the settlement agreement, and we believe that it clearly and succinctly sets forth the terms of a settlement. (See *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 305 [121 Cal.Rptr.2d 391, 48 P.3d 423] [absent fraud, deception, or other abuse, release of "all claims" embraces claims not expressly described in release agreement].)

a triable issue of material fact as to whether he was entitled to rescind the agreement due to unilateral mistake. Neither claim has merit.

■ Mutual assent to contract is based upon objective and outward manifestations of the parties; a party's "subjective intent, or subjective consent, therefore is irrelevant." (*Beard v. Goodrich* (2003) 110 Cal.App.4th 1031, 1040 [2 Cal.Rptr.3d 160]; see also *Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 811.) Defendants' motion established from the face of the agreement that there was mutual assent. It was signed by both plaintiff and his attorney, and there was no indication from the document that it was conditional or that plaintiff did not intend to be bound by its terms. (*Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 728 [120 Cal.Rptr.2d 58] [bank objectively manifested assent through its employee's execution of acknowledgment and acceptance of escrow conditions]; *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049–1050 [107 Cal.Rptr.2d 645] (*Marin Storage*) [party objectively manifested assent by signing "Work Authorization and Contract" that clearly stated it was contract].) Plaintiff's opposition—based upon nothing more than his claim that he had not read or understood the agreement before signing it—raised no triable issue on the question of mutual assent. (*Marin Storage, supra,* at p. 1049 [ordinarily, party "who signs an instrument which on its face is a contract is deemed to assent to all its terms"]; cf. *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1367 [53 Cal.Rptr.2d 481] [summary judgment proper in employment discrimination action where employee signed release, notwithstanding his claim that, despite express language in release to contrary, he never intended to abandon discrimination and harassment claims].)

■ Having cited no cases below, plaintiff argued that he was entitled to rescind the settlement agreement. The sole authority plaintiff relied on was Civil Code section 1689, which provides in relevant part: "A party to a contract may rescind the contract . . . [¶] (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake . . . ." (Civ. Code, § 1689, subd. (b)(1).) "A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances." (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278 [109 Cal.Rptr.2d 807, 27 P.3d 702], fn. omitted (*Donovan*).)[25]

In *Donovan,* our high court explained that California does not follow the "traditional rule" recited in the first Restatement of Contracts, section 503, to

---

[25] In his reply brief—although not mentioned in either his summary judgment opposition or his opening brief—plaintiff cites *Donovan, supra,* 26 Cal.4th 261, in support of his contention that he raised a triable issue of fact that he was entitled to rescind the agreement due to mistake. As we explain, *Donovan* offers no support for plaintiff's rescission theory.

the effect that "unilateral mistake did not render a contract voidable unless the other party knew of or caused the mistake." (*Donovan, supra,* 26 Cal.4th at p. 280.) Instead, the *Donovan* court applied the more expansive rule of Section 153 of the Restatement Second of Contracts[26] allowing rescission due to unilateral mistake where enforcement of the contract would be unconscionable. (*Donovan, supra,* at p. 281.) In instances in which the other party was unaware of and did not cause the mistake, the party claiming unilateral mistake must show that "(1) the . . . mistake [was one] regarding a basic assumption upon which the [party claiming mistake] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [party claiming mistake]; (3) the [party claiming mistake] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." (*Donovan, supra,* at p. 282.) As to the third factor, both the Restatement Second of Contracts[27] and Civil Code section 1577[28] note that the mistaken party's "neglect of legal duty" will bar relief; however, ordinary negligence does not constitute such "neglect of legal duty" that will preclude rescission. (*Donovan, supra,* at p. 283; see also *M. F. Kemper Const. Co. v. City of L. A.* (1951) 37 Cal.2d 696, 702 [235 P.2d 7].)

■ We need look no further than the third *Donovan* factor to conclude that plaintiff raised no triable issue of material fact concerning possible rescission of the settlement agreement.[29] "It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it." (*Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 339 [214 Cal.Rptr. 194]; see also

---

[26] "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in [section] 154, and [¶] (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or [¶] (b) the other party had reason to know of the mistake or his fault caused the mistake." (Rest.2d Contracts, § 153.)

[27] "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation . . . , unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." (Rest.2d Contracts, § 157.)

[28] "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, [¶] 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." (Civ. Code, § 1577.)

[29] In so concluding, we do not mean to imply that plaintiff's evidentiary showing in opposition to summary judgment was sufficient with respect to any of the three other *Donovan* factors.

*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178].)[30]

Plaintiff has cited no California cases (and we are aware of none) that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it—absent fraud or knowledge by the other contracting party of the alleged mistake—may later rescind the agreement on the basis that he did not agree to its terms. To the contrary, California authorities demonstrate that a contracting party is not entitled to relief from his or her alleged unilateral mistake under such circumstances. (See, e.g., *Casey v. Proctor* (1963) 59 Cal.2d 97, 104–105 [28 Cal.Rptr. 307, 378 P.2d 579] [failure to read release, or if it was read, to understand that it extended to personal injury as well as property damage claims, was "neglect of a legal duty" under Civ. Code, § 1577, precluding rescission]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 [53 Cal.Rptr.2d 515] [employee bound by contractual arbitration provision irrespective of whether she was aware of it when she signed contract]; *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1816–1817 [34 Cal.Rptr.2d 732] [unilateral mistake concerning absence of requirement to name lessor as additional insured due to lessee's failure to read equipment lease did not justify relief].) Indeed, the comments to the Restatement indicate that a party ordinarily may not obtain relief based upon unilateral mistake where he or she has failed to read the contract before signing it. (See Rest.2d Contracts, § 157, com. b, p. 417: "Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms.")

Plaintiff here was required to "produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66]; see also *Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1152 [243 Cal.Rptr. 420] [opposing evidence that is merely equivocal will not suffice to raise a triable fact issue].) Plaintiff failed to make such a showing. We therefore reject plaintiff's contention—based on his failure to read the agreement or understand its terms or consequences—that there was a triable issue of fact as to either mutual consent or his entitlement to rescind the settlement agreement.

---

[30] As our country's high court explained many years ago: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." (*Upton v. Tribilcock* (1875) 91 U.S. 45, 50 [23 L.Ed. 203].)

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Premo, J., concurred.