[No. B103661. Second Dist.. Div. Four. June 16. 1998.]

SANFORD LAZARUS, Plaintiff and Appellant, v.
TED TITMUS et al., Defendants and Respondents.

1244

**COUNSEL**

Leslie S. McAfee for Plaintiff and Appellant.

Cairns, Doyle, Lans, Nicholas & Soni, John C. Doyle and Cynthia L. Hoelzel for Defendants and Respondents.

**OPINION**

**VOGEL (C. S.), P. J.**—In September of 1993, after an altercation in a parking lot, appellant Sanford Lazarus was hit by a car driven by respondent

Ted Titmus. The car was owned by respondent Carol Forsythe. Appellant brought suit for personal injury against Titmus and Forsythe in November of 1993. A stipulation to binding arbitration was signed by the parties' attorneys in 1995, but respondents refused to go forward. Appellant's petition to compel arbitration was denied in 1996 on the ground the stipulation was void. The case was set for trial. Appellant did not appear. Instead, he requested a two-week continuance based on a new job offer and need to attend an orientation and training seminar. The request was denied, and the case was ultimately dismissed due to the inability of appellant's counsel to go forward in his absence. The issues on appeal are whether the stipulation to binding arbitration was indeed void, as the trial court ruled, and whether the trial court abused its discretion in denying the motion to continue.

## Relevant Procedural Background

On May 22, 1995, as the matter approached its first trial date and after nonbinding judicial arbitration had resulted in a defense award and request for trial de novo, the attorneys for the parties signed a "Stipulation Re Binding Arbitration." The stipulation provided in part: ". . . Plaintiff Sanford Lazarus together with Defendants Ted Titmus and Carol Forsythe, and their respective attorneys do hereby agree and stipulate to binding arbitration as follows: [¶] 1. Each party hereto gives up their right to trial by jury, and any appeal, and agrees to have this dispute resolved by way of binding arbitration. [¶] . . . [¶] 9. Each person executing this stipulation on behalf of anyone, represents and warrants that they have been fully empowered to execute this agreement." Terence Knabb of Thomas Moore & Associates signed on behalf of respondents, and also signed William J. Houser's name on behalf of appellant.[1]

By order dated May 24, 1995, the court ordered the case dismissed without prejudice "[p]ursuant to Stipulation Re Binding Arbitration filed herein this date . . . ." The court "retain[ed] jurisdiction to enforce the award."

In January of 1996, Houser was removed from the case by appellant. New counsel, Leslie S. McAfee, substituted in as attorney of record in April of 1996.

On April 24, 1996, appellant, through his attorney McAfee, filed a motion to compel arbitration pursuant to section 1281.2 of the Code of Civil Procedure. McAfee and former counsel Houser stated in declarations that the sole reason given by defendants for refusal to arbitrate was the failure of the

---

[1]Houser gave Knabb power of attorney to sign his name.

stipulation to impose a limit on the amount that could be awarded to appellant by the arbitrator.

Respondents opposed the petition to compel on the ground that because the stipulation was signed by counsel rather than the parties, it was void. The court continued the hearing to allow respondents to file declarations stating that they had not consented to stipulate to arbitration in place of trial. Up to that point, the only declaration in opposition was from respondents' attorney who stated that Knabb had died, and he could find nothing in the record to indicate the clients had approved the stipulation. In his subsequently filed declaration, Titmus stated: "On or about July 10, 1995, Mr. Terence Knabb, my former counsel of record, notified me via facsimile that the matter was going to arbitration again and that my presence was required." Titmus's declaration went on to state: "At no time did Mr. Knabb inform me that the new arbitration would be binding, nor was binding arbitration ever requested or discussed," "I never agreed or consented to a binding arbitration," "Mr. Terence Knabb signed the stipulation to go to binding arbitration without my knowledge, permission or consent," and "At no time did I consent to a waiver of my right to a trial by jury." Forsythe's declaration reiterated the latter statements, although she apparently had not received the July 1995 communication. At the hearing on June 5, 1996, the court denied the petition to compel, vacated the dismissal, and set the case for trial on July 29, 1996.

Appellant appealed from the order denying the petition to compel arbitration and submitted concurrently a petition for writ of supersedeas to stay the trial. By order dated July 18, 1996, this court instructed appellant to lodge with the court on or before July 23, 1996, the following: "1. All papers submitted by defendants in opposition to the motion to compel arbitration; [¶] 2. The reporter's transcript for the June 5, 1996, hearing on the motion to compel arbitration." On July 24, 1996, appellant lodged documents "pursuant to order filed July 18, 1996," but there was no reporter's transcript, only a declaration from appellant's counsel summarizing the proceedings at the two hearings. On that same date, appellant's counsel filed a declaration which stated that he had been in a deposition on July 23 which ran longer than expected and so was unable to file the documents sooner. On July 26, 1996, this court issued an order which stated: "The petition for writ of mandate [sic] filed July 12, 1996, has been read and considered and is denied for failure to provide an adequate record for writ review. (California Rules of Court, rule 56(c).)"

On the day set for trial, appellant filed a motion to continue. According to appellant's declaration, he was offered a job on Thursday, July 25, 1996, which necessitated immediately attending a two-week training course in

New Jersey. Appellant attempted to contact his attorney, McAfee, on Thursday to inform him of the conflict, but McAfee was not in his office and his voice mail was full. Appellant did not reach his attorney until Saturday. McAfee confirmed in his declaration that he had been unreachable on Thursday because he was in an administrative hearing until 7 p.m. On Friday, July 26, 1996, he attended the final status conference unaware of his client's wish for a continuance. When appellant finally reached him on Saturday, McAfee told him he would attempt to obtain a continuance and prepared a motion, faxing a copy to respondents' counsel over the weekend. Appellant sought a two-week delay in the start of trial.

The court denied the motion for continuance, stating on the record: "[I]t appears to the court that notwithstanding knowledge of the trial date set for today's date, the plaintiff has seen fit to absent himself from the jurisdiction with full knowledge of the trial date. And I don't find that good cause to continue a trial." The court ordered appellant's counsel to proceed, although he stated he was unable to go forward in the absence of appellant. The court inquired whether respondents would waive a jury, which their counsel obtained consent to do. The court then deemed the jury waived as to appellant over his counsel's objection because he was unable to immediately post fees. The court went through the formality of asking appellant's counsel to make an opening statement and call his first witness, which he declined to do. At that point, in accordance with the court's suggestion, respondents moved for judgment pursuant to section 631.8 of the Code of Civil Procedure.[2] The court granted the motion and entered judgment for respondents.

## DISCUSSION

### I

The first issue is whether the May 1995 stipulation to arbitrate the matter and waive jury trial was enforceable. We believe the controlling case is *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]. There, the plaintiff was surprised to learn that her attorney had signed a stipulation committing her to binding arbitration before an arbitrator of defendant's choosing and waiving any right to damages in excess of $15,000. The stipulation had been approved by the court which issued an order to arbitrate. The order declared: "The arbitration and award shall be binding." (38 Cal.3d at p. 400.) When plaintiff first learned of the stipulation, she discharged her attorney, hired new counsel, and moved to invalidate it. At the hearing on plaintiff's motion, the trial

---

[2]Section 631.8 is a motion for judgment made by one party after the other party has completed his or her presentation of evidence.

court affirmed the validity of the agreement, apparently in the belief that it concerned a procedural matter within the scope of an attorney's unilateral discretion. The issue on appeal was whether plaintiff was "bound by her attorney's signature, purportedly on her behalf." (*Id.* at p. 402, fn. omitted.)

The Supreme Court analyzed the issue utilizing principles of agency, and concluded that there was no actual authority in view of the uncontradicted evidence indicating that plaintiff expressly told the attorney she would not agree to binding arbitration. The court then examined whether the attorney had apparent authority: "An attorney retained to represent a client in litigation is clothed with certain authority by reason of that relationship. 'The attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . "In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client." [Citation.]' " (*Blanton* v. *Womancare, Inc.*, *supra*, 38 Cal.3d at pp. 403-404, quoting *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 276-277 [74 Cal.Rptr. 544, 449 P.2d 760].) The court recognized a number of areas where there could be no presumption of authority to act for the client: " '[The attorney] has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation[,] . . . may not 'stipulate to a matter which would eliminate an essential defense[,] . . . agree to the entry of a default judgment[,] . . . stipulate that only nominal damages may be awarded[,] . . . agree to an increase in the amount of the judgment against his client[,] . . . waive findings so that no appeal can be made[, or] . . . dismiss [a] cross-complaint[.]" (*Blanton* v. *Womancare, Inc.*, *supra*, at pp. 404-405.)

Turning to the question of whether a stipulation to arbitrate affected a procedural right or remedy as opposed to an essential right of the client, the court held: "[A]n attorney, merely by virtue of his employment as such, has no apparent authority to bind his client to an agreement for arbitration. We find no reason in logic, or policy, for holding his apparent authority in that respect is enlarged by reason of the fact that he has been retained to engage in litigation. When a client engages an attorney to litigate in a judicial forum, the client has a right to be consulted, and his consent obtained, before the dispute is shifted to another, and quite different, forum, particularly where the transfer entails the sort of substantial consequences present here." (*Blanton* v. *Womancare, Inc.*, *supra*, 38 Cal.3d at pp. 407-408.)

■ Appellant contends *Blanton* is not applicable here because the defense of the matter had for all practical purposes been assumed by respondents' insurer and it was the insurer's consent or lack of consent to arbitration which was important. There are several problems with this reasoning. One is the lack of factual support in the record for the assertions made concerning the existence of insurance and the insurer's control over the litigation. Moreover, as respondents point out in their brief, a judgment in excess of policy limits would have exposed respondents to personal liability. An unfavorable effect on respondents and their personal assets was rendered all the more likely by appellant's expressed intention to pursue a claim for intentional tort. Since respondents' substantive rights were potentially impacted by the decision to submit to binding arbitration, *Blanton* is controlling and required a finding of actual consent or ratification. The trial court found that respondents had not consented and had not ratified the act. These findings are supported by substantial evidence.

Appellant maintains that the trial court did not have jurisdiction to make a ruling as to the validity of the order, the prior order having already deemed the stipulation to be binding. Appellant's petition to compel was made under section 1281.2 of the Code of Civil Procedure which requires the court to determine "that an agreement to arbitrate the controversy exists" prior to ordering the matter into arbitration. The trial court acted in accordance with the statute. The court was not bound by the prior order which was the result of the stipulation of the attorneys and not of an examination of the validity of the agreement to arbitrate.[3]

II

■ The second issue is whether the trial court abused its discretion in refusing to continue the July 29, 1996, trial date to accommodate appellant. (See, e.g., *Foster* v. *Civil Service Com.* (1983) 142 Cal.App.3d 444, 448 [190 Cal.Rptr. 893] ["The granting or denying of a continuance is a matter within the court's discretion, which cannot be disturbed 'on appeal except upon a clear showing of an abuse of discretion.' [Citation.]"].)

Rule 375 of the California Rules of Court states that "[c]ontinuances before or during trial in civil cases are disfavored," and that "[t]he date set for trial shall be firm." Continuances may be granted "on an affirmative

---

[3]We note that a similar situation existed in *Blanton*, where the plaintiff sought to obtain an order invalidating an agreement to arbitrate after the case had been ordered into arbitration. As we have seen, the Supreme Court held that the trial court should have granted the motion and deemed the agreement void despite the earlier ruling upholding the validity of the agreement.

showing of good cause under the standards recommended in section 9 of the Standards of Judicial Administration."

Section 9 of the Standards of Judicial Administration provides: "To ensure the prompt disposition of civil cases, each superior court should adopt a firm policy regarding continuances, emphasizing that the dates assigned for a trial setting or pretrial conference, a settlement conference and for trial must be regarded by counsel as definite court appointments." The general rule governing continuances set forth in section 9 is that ". . . the necessity for the continuance should have resulted from an emergency occurring after the trial setting conference that could not have been anticipated or avoided with reasonable diligence and cannot now be properly provided for other than by the granting of a continuance." Section 9 provides the following list of specific matters that "should, under normal circumstances, be considered good cause for granting the continuance of a trial date: [¶] (1) Death . . . . [¶] (2) Illness . . . . [¶] (3) Unavailability of trial attorney or witness . . . . [¶] (4) Substitution of trial attorney . . . . [¶] (5) Significant change in status of case[.]"

Section 9 of the Standards of Judicial Administration further instructs the trial court to "consider all matters relevant to a proper determination of the motion, including the court's file in the case and any supporting declarations concerning the motion; the diligence of counsel, particularly in bringing the emergency to the court's attention and to the attention of opposing counsel at the first available opportunity and in attempting to otherwise meet the emergency; the nature of any previous continuances, extensions of time or other delay attributable to any party; the proximity of the trial or hearing date; the condition of the court's calendar and the availability of an earlier trial or hearing date if the matter is ready for trial or hearing; whether the continuance may properly be avoided by the substitution of attorneys or witnesses, by the use of depositions in lieu of oral testimony, or by the trailing of the matter for trial or hearing; whether the interests of justice are best served by a continuance, by the trial or hearing of the matter, or by imposing conditions on its continuance; and any other fact or circumstance relevant to a fair determination of the motion."

Looking at the record, it appears that the trial court was unconvinced that appellant could not have arranged his new work schedule so as to be available for a short trial. Nor was the court convinced that appellant could not have notified his attorney about the potential conflict so that the motion could have been brought before the July 29 date set for trial. Appellant knew about the trial date when he accepted the position, and under section 9 of the Standards of Judicial Administration, was to regard the date as a definite

court appointment which takes precedence over all nonemergencies. We believe the trial court was acting within its discretion in denying the motion to continue.

## DISPOSITION

The order denying the petition to compel arbitration and the judgment of dismissal are affirmed.

Epstein, J., and Hastings, J., concurred.