[No. G040112. Fourth Dist., Div. Three. Oct. 30, 2009.]

ADAM TOAL et al., Plaintiffs and Appellants v.
VALERE A. TARDIF et al., Defendants and Appellants.

1210

**COUNSEL**

Peter E. Ronay for Plaintiffs and Appellants.

Theodore C. Beall for Defendants and Appellants.

**OPINION**

**IKOLA, J.**—A dispute arose between plaintiffs Adam and Joy Toal and defendants Valere A. and Helen Tardif.[1] Each couple's attorney signed a stipulation to resolve the dispute through private arbitration. Although the parties themselves did not sign the stipulation, the document stated the attorneys' signatures were "for" their clients.

Arbitration ensued. The arbitrator entered an award in plaintiffs' favor. Plaintiffs petitioned the court for confirmation of the arbitration award. They attached a copy of the arbitration stipulation to their petition, but presented no

---

[1] Because we must differentiate between defendants Valere Tardif and Helen Tardif in a portion of this opinion, we will refer to them by their first names for clarity and ease of reference where it is necessary to distinguish between them. No disrespect is intended. Where it is not necessary to distinguish between them we will refer to them collectively as defendants.

evidence that defendants had consented to or ratified the stipulation. The court granted plaintiffs' petition to confirm the award and entered judgment accordingly.

Defendants challenge the judgment confirming the arbitration award. Plaintiffs cross-appeal, contending the court erred in denying them an award of postarbitration attorney fees.

We reverse the judgment because plaintiffs failed to prove a basic prerequisite of private arbitration, i.e., the existence of a valid arbitration agreement. The signature of defendants' attorney on the arbitration stipulation, standing alone, did *not* constitute substantial evidence that defendants agreed to arbitrate the dispute. Plaintiffs' cross-appeal is dismissed as moot.

## FACTS

Plaintiffs bought a house from defendants and subsequently sued them for breach of contract, negligence, misrepresentation, and negligent misrepresentation.

Defendants answered the complaint.

Two months later, the attorneys for both parties advised the court they hoped to agree on a written stipulation for binding arbitration. The record does not reflect whether defendants were present at the hearing. Neither attorney mentioned whether his respective clients had agreed to arbitration.

The next month, the parties' attorneys and the court signed a stipulation and order for arbitration and appointment of arbitrator. Neither defendants nor plaintiffs signed the stipulation, but the document's signature lines stated the attorneys' signatures were "for" their respective clients. The document stated the parties agreed that the matter would be resolved by binding arbitration and that court proceedings would be stayed pursuant to Code of Civil Procedure section 1281.4.[2]

Following arbitration, the arbitrator issued an award that stated, "witnesses were sworn and gave testimony" at the hearing. The award does not reveal whether defendants were present or testified at the arbitration hearing.[3] The

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[3] Valere asserted in the trial court, and now asserts on appeal, that during arbitration, he was not allowed to testify in his own behalf. Plaintiffs alleged in the trial court that Valere did in fact testify at the arbitration hearing.

arbitrator awarded plaintiffs $55,475 on their complaint, and "nothing" to defendants on their cross-complaint.[4] The arbitrator made no award of costs.

The following month, a substitution of attorney was filed substituting Valere in propria persona for his former counsel, Robert Malin. The form was silent as to Helen, who had also been represented by Malin. The form was typed, had a professional appearance, and was signed by Malin and Valere.

Plaintiffs petitioned the court to confirm the arbitration award and to enter judgment including costs and attorney fees. Plaintiffs attached a copy of the arbitration stipulation to their petition, but no other evidence concerning the parties' agreement to arbitrate their dispute.

Valere, now in propria persona, filed a request for trial de novo after judicial arbitration. He attached his written statement, asserting he "never verbally or in writing agreed to Binding Arbitration" and that he told his attorney he "didn't want to go to aarbitration [*sic*] but [the attorney] said 'it's too late, I have already signed up for it.'" Valere stated his "blind trust in [his] attorney precluded [him] from questioning [whether] what [the attorney] said was the truth or not." Although Valere signed his statement, his signature was *not* made under penalty of perjury. He did not attach any declarations or other supporting evidence.

Plaintiffs filed a response, arguing Valere's request for trial de novo after judicial arbitration was inapplicable because "this matter was ordered into non-judicial binding arbitration." Plaintiffs further contended Valere's statement failed "to give any factual or legal basis in support of any statutory ground to vacate the award." As to Valere's assertion he never agreed to binding arbitration, plaintiffs argued the claim was "disingenuous and incredible" and irrelevant "to the Petition to Confirm (or Vacate) the Award."

The court granted plaintiffs' petition for confirmation of the award. It remanded the case to the arbitrator and directed him to correct the award to include costs. The court ordered plaintiffs, upon the arbitrator's issuance of a new decision, to "petition to confirm the corrected award." Apparently treating Valere's written statement as a request to vacate the award, the court denied his request for trial de novo and to vacate the award.

On remand, the arbitrator awarded costs to plaintiffs and corrected the award accordingly.

Plaintiffs petitioned the court to confirm the corrected award and to enter judgment. They did *not* attach a copy of the arbitration stipulation to their petition, nor did they provide any evidence of its validity.

---

[4] The record does not contain defendants' cross-complaint.

Valere filed a request with the court asking it to dismiss the arbitration award. His statement alleged: "[My attorney] agreed to 'binding arbitration' without my approval and without indicating or discussing with me what it would entail. [¶] On the first day of Arbitration, when I realized what was going on, I complained to [my attorney, whom] I was paying and trusting to represent me in a fair way, [who] called me a 'big cry baby' . . . ." In his statement, Valere argued section 1287.2 requires a court to dismiss a proceeding as to any person "not bound by the arbitration award and . . . not a party to the arbitration." Valere signed his statement, but not under penalty of perjury. He attached no declarations or any other evidence.

Plaintiffs filed a response to Valere's request to dismiss the arbitration award. They argued he failed to explain why he "was not a party to the arbitration" and why he "should not be bound."

At the hearing on plaintiffs' petition to confirm the corrected award, the court heard argument from plaintiffs' counsel, then stated it would take the matter under submission. When Valere attempted to address the court, the following colloquy ensued:

"THE COURT: Mr. Tardif, the only reason we are here is to either compel the arbitration award or—we are not here to reargue the arbitration. You were represented by counsel.

"MR. TARDIF: I understand that, Your Honor.

"THE COURT: . . . I cannot revisit the arbitration. I'm not allowed to do that by law. The arbitration is over. I can only confirm the arbitration award . . . . [¶] . . . You want to talk about the fact that you are not happy with your attorney at the arbitration. I read your brief. I understand that."

"THE COURT: This is the third or fourth time I have listened to you and the third or fourth time I have told you I do not have the authority to overturn an arbitration award. I cannot—we are not here to determine if I can overturn the arbitration award."

In a written ruling, the court confirmed the corrected arbitration award.[5]

Valere filed a notice of appeal from the judgment confirming the arbitration award.[6]

---

[5] The court also denied plaintiffs' request for postarbitration attorney fees. Plaintiffs cross-appeal from that portion of the judgment. Because we reverse the judgment confirming the corrected arbitration award, we need not address plaintiffs' cross-appeal.

[6] The judgment is appealable under section 1294, subdivision (d).

### DISCUSSION

*Appellate Jurisdiction to Decide the Appeal from the Judgment Against Helen*

As a preliminary matter, we must determine whether we have jurisdiction to decide the appeal purportedly taken from the judgment against Helen, or whether our jurisdiction extends only over the appeal from the judgment against Valere. Plaintiffs contend that Helen has not appealed and "the judgment against her must therefore stand regardless of what this court decides in Valere's appeal." We disagree.

The notice of appeal is *signed* by Valere, but the notice does *not* state the name of the party taking the appeal. The notice of appeal is on Judicial Council of California form APP-002, the first line of which has a space to fill in the name of the party appealing the judgment. The space on the notice signed by Valere is *blank*—Valere neglected to fill in a name or names. Thus, the notice of appeal states: "NOTICE IS HEREBY GIVEN that *(name):* [¶] appeals from the following judgment or order in this case, which was entered on *(date)*." The form then sets out a series of standard boxes whereby the appellant can indicate the nature of the judgment or order from which the appeal is taken. Valere checked the box labeled "Judgment after court trial" *and* the box labeled "Other" to which he appended the description "Judgment after arbitration Jan. 31, 2008."

██ California Rules of Court, rule 8.100(a)(1) provides that the "appellant or the appellant's attorney must sign the notice [of appeal]." This language has been construed, however, to allow "*any person,* attorney or not, who is empowered to act on appellant's behalf," to sign the notice of appeal. (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 853 [237 Cal.Rptr. 282].) "[W]e must conclude [Valere] was authorized to . . . act [on behalf of Helen] in the absence of a clear and satisfactory showing that such authority was lacking." (*Ibid.*) Moreover, "[t]he notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) Here, the notice clearly identifies the January 31, 2008 judgment as the judgment challenged on appeal, a judgment which, on its face, subjects both Valere and Helen to the same award. Liberal construction of the notice of appeal, which does not expressly identify the name of the appealing party, but which does identify a judgment subjecting a husband and wife to the same award, compels our

conclusion that both Valere and Helen have appealed. Finally, no prejudice results from our liberal construction. The parties have argued the merits as to both appellants.

*Plaintiffs Did Not Meet Their Burden of Establishing an Enforceable Agreement for Binding Arbitration*

Defendants contend the court erred by denying the request to vacate the arbitration award or dismiss plaintiffs' petition to confirm it. They assert they "were never made aware of the stipulation to submit the matter to binding arbitration" and "most certainly" never consented to it. Defendants claim Valere raised this "issue of his lack of consent . . . five (5) times in the context of the petitions he filed." Relying on *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645] (*Blanton*) and *Sanker v. Brown* (1985) 167 Cal.App.3d 1144 [213 Cal.Rptr. 768] (*Sanker*), defendants argue "that counsel may not waive his or her client's substantial rights by entering into binding arbitration agreements without the client's consent."

Plaintiffs acknowledge defendants are "correct . . . that an attorney has no authority to submit his or her client to binding arbitration without that client's consent." But plaintiffs contend defendants submitted no evidence "that [Valere] did not consent to binding arbitration." They argue his statements were not signed under penalty of perjury and were therefore inadmissible as evidence at a law and motion hearing. Plaintiffs further contend that because the court did not issue a statement of decision, the court impliedly found defendants consented to arbitration.

"On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7 [64 Cal.Rptr.2d 484] (*Lindenstadt*).)

We divide the balance of our opinion into three sections. We first discuss the defining hallmark of private arbitration—that such arbitration is wholly predicated on the existence of a valid arbitration contract. We next examine a basic requirement for an enforceable arbitration contract—that each party

must personally consent to or ratify the agreement. We then evaluate the court's order confirming the arbitration award, with particular focus on the evidence plaintiffs presented to the court on whether defendants consented to or ratified the contract.

### 1.  *The Requirement of a Contract for Private Arbitration*

■ Private arbitration (also called contractual or nonjudicial arbitration) "is a procedure for resolving disputes which arises from contract; it only comes into play when the parties to the dispute have agreed to submit to it." (*Herman Feil, Inc. v. Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414 [251 Cal.Rptr. 895].) Such arbitration is governed by the California Arbitration Act (§ 1280 et seq.) (Arbitration Act), "a comprehensive, all-inclusive statutory scheme applicable to all written agreements to arbitrate disputes." (*American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 198 [285 Cal.Rptr. 626].) Contractual arbitration awards, if valid, are presumed to be binding and final.[7] (*Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, 1190 [117 Cal.Rptr.2d 842] (*Trabuco*).)

Judicial intervention in the private arbitration process is strictly limited because the parties have agreed to "bypass the judicial system" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899]) and submit their dispute to "nonjudicial resolution by an independent third person or persons" (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 499, p. 955). By agreeing to arbitration, parties anticipate a relatively speedy, inexpensive and final resolution, one that may be based on " 'broad principles of justice,' " rather than strictly the rule of law. (*Moncharsh, supra,* 3 Cal.4th at pp. 9–11.) Consequently, "as a general rule courts will indulge every reasonable intendment to give effect to arbitration proceedings." (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243 [28 Cal.Rptr.2d 402].)

■ A party may petition a court to enforce a valid arbitration contract under the Arbitration Act. (§§ 1281.2 [compel arbitration], 1281.3 [consolidation of arbitration proceedings], 1281.4 [stay of pending action], 1281.6 [appointment of arbitrator], 1285 et seq. [confirmation, correction, vacation of award].) Here, plaintiffs requested and obtained *postarbitration* enforcement

---

[7] Judicial arbitration, in contrast, occurs "only when an action has been filed" in court, is mandated by statute for small civil cases, and (absent the parties' agreement to the contrary) is *not* final since a party may elect trial de novo after arbitration. (*Blanton, supra,* 38 Cal.3d at p. 402, fn. 5; see § 1141.10 et seq.)

of an arbitration award. In evaluating the propriety of the court's ruling, however, we find it useful to review the well-established law on prearbitration petitions to compel arbitration.

Prior to arbitration, if a party to an arbitration contract refuses to arbitrate the controversy, the other party may petition the court to order arbitration under section 1281.2. A party petitioning to compel arbitration *must* allege "the existence of a written agreement to arbitrate a controversy . . . ." (§ 1281.2; see *Brodke v. Alphatec Spine Inc.* (2008) 160 Cal.App.4th 1569, 1571 [73 Cal.Rptr.3d 554].)

In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*), our Supreme Court set forth the procedure to be followed when a petitioner seeks to compel arbitration: "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement—either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation [citation]—that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." (*Id.* at p. 413.)[8]

Thus, our Supreme Court has clearly stated that a court, before granting a petition to compel arbitration, *must* determine the factual issue of "the existence or validity of the arbitration agreement." (*Rosenthal, supra*, 14

---

[8] In *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 [105 Cal.Rptr.2d 597], the trial court denied a petition to compel arbitration because the arbitration contract "was not properly authenticated" (*id.* at pp. 217–218), even though "the signature's authenticity . . . was never challenged" (*id.* at p. 218). The parties did *not* contest the existence or validity of the arbitration contract. The appellate court reversed, holding the petitioner was *not* required "to follow the normal procedures of document authentication." (*Ibid.*) The appellate court stated a petitioner meets its burden of proof under section 1281.2 by merely *alleging* "the *existence* of an agreement and support[ing] the allegation as provided in [California Rules of Court,] rule 371 [now rule 3.1330]," i.e., by reciting verbatim in the petition or attaching to it a copy of the arbitration agreement, even if unauthenticated. Under the *Condee* rationale, "[o]nce the petitioners [allege] that the agreement exists, the burden [shifts] to respondents to prove the falsity of the purported agreement." (*Condee*, at p. 219.) To the extent *Condee* conflicts with *Rosenthal*, our Supreme Court's decision is controlling. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Cal.4th at pp. 402, 413.) In this way, a court's role, though limited, is critical. "There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341].)

■  After arbitration has resulted in an award, the Arbitration Act permits a party to petition "the court to confirm, correct or vacate the award." (§ 1285.) The opposing party may respond to such a petition by requesting "the court to dismiss the petition or to confirm, correct or vacate the award." (§ 1285.2; see § 1287.2.) The proponent of the arbitration award (whether it be the petitioner or the respondent) must recite or attach a copy of the arbitration agreement. (§§ 1285.4, subd. (a), 1285.6.) A court presented with such a petition or response is empowered only to confirm, correct, or vacate the award or to dismiss the proceeding. (§ 1286.) If the court confirms the award, it shall enter judgment accordingly. (§ 1287.4.)

■  We have found no case that describes (as clearly as did *Rosenthal* for petitions to compel arbitration) the postarbitration duty of a court to determine the existence and validity of an arbitration contract, and the burden of proof borne by an award's proponent, when enforcement of an arbitration award is requested under circumstances where, as here, no prior judicial determination has been made as to the existence of the contract to arbitrate. But we see no reason why *Rosenthal*'s analysis should not apply equally at this juncture. Absent an enforceable agreement, an arbitration award is invalid. We conclude *Rosenthal*'s prescription for the court's duty, as well as the parties' respective burdens of proof, applies to proceedings for confirmation of an arbitration award. Thus, the party seeking to enforce an award must prove by a preponderance of the evidence that a valid arbitration contract exists. The court may not confirm an award without first finding the parties agreed in writing to arbitrate their dispute, unless a judicial determination of the issue has already been made (e.g., by a court considering a petition to compel arbitration).

The burden upon the award's proponent to prove the existence of a valid agreement, and the court's duty to determine the issue, are reflected in the statutory requirement that the proponent recite or attach the contract. (§§ 1285.4, subd. (a), 1285.6.) Furthermore, in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 [204 P.2d 23] (*Loving*), our Supreme Court stated, "The question of the validity of the basic contract being essentially a judicial

question, it remains such whether it is presented in a proceeding 'for an order directing . . . arbitration' . . . or in a proceeding 'for an order confirming' or 'vacating an award' . . . ." (*Id.* at p. 610 [concerning an illegal transaction and contract].)

In sum, before a court may confirm an arbitration award, the court must first find the existence of a valid arbitration agreement.

### 2. The Requirement of Consent to Arbitration

■ "An 'arbitration agreement is subject to the same rules of construction as any other contract . . . .' " (*Duffens v. Valenti* (2008) 161 Cal.App.4th 434, 443 [74 Cal.Rptr.3d 311].) For any contract, the parties' consent is a basic element. (Civ. Code, § 1550.) In addition, the parties' consent must be communicated to one another. (Civ. Code, § 1565.) Thus, a party's consent is essential to "the contractual underpinning of the arbitration procedure . . . ." (*Herman Feil, Inc. v. Design Center of Los Angeles, supra,* 204 Cal.App.3d at p. 1414.) "[T]he asserted absence of contractual consent renders arbitration, by its very definition, inapplicable to resolve the issue." (*Ibid.*)

■ In *Blanton, supra,* 38 Cal.3d at pages 407–408, our Supreme Court held a client is bound by an arbitration agreement signed by his or her counsel only if the client consented to or ratified the agreement. (See also *Lazarus v. Titmus* (1998) 64 Cal.App.4th 1242, 1249 [75 Cal.Rptr.2d 676] (*Lazarus*); *Sanker, supra,* 167 Cal.App.3d at p. 1147; *CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1172–1173 [114 Cal.Rptr.2d 851] (*CPI*).)[9] "[A]n attorney, merely by virtue of his employment as such, has no apparent authority to bind his client to an agreement for arbitration. . . . When a client engages an attorney to litigate in a judicial forum, the client has a right to be consulted, and his consent obtained, before the dispute is shifted to another, and quite different, forum, particularly where the transfer entails the sort of substantial consequences present here."[10] (*Blanton, supra,* 38 Cal.3d at pp. 407–408.)

---

[9] A party may raise the issue of his or her lack of consent to the attorney's action at various stages of the proceedings. For example, the issue was raised by the plaintiff in *Blanton* prior to arbitration in a motion to invalidate the stipulation (*Blanton, supra,* 38 Cal.3d at p. 400) and by the defendant in *Sanker* after arbitration in a motion to set aside the arbitration award (*Sanker, supra,* 167 Cal.App.3d at p. 1146). In *Lazarus,* it was raised as a response to a motion to compel arbitration. (*Lazarus, supra,* 64 Cal.App.4th at p. 1246.) In *CPI,* the client moved for reconsideration of a court order for binding arbitration; this court found the client's withdrawal of consent was not communicated to the other party prior to the other party's acceptance of the offer to arbitrate. (*CPI, supra,* 94 Cal.App.4th at pp. 1169–1171.)

[10] At oral argument, plaintiffs' attorney misleadingly suggested that the facts of this case are akin to those in *Caro v. Smith* (1997) 59 Cal.App.4th 725 [69 Cal.Rptr.2d 306]. In *Caro,* this court rejected defense counsel's contention that *their client's* failure to personally sign an

"[W]hen it comes to such a substantial matter as compromise of an action, 'a person dealing with an attorney, as dealing with any agent, must ascertain whether the agent has authority to do the purported act and assumes the risk if in fact the agent has no such authority.' " (*Blanton, supra*, 38 Cal.3d at p. 406.) For example, "[a]n attorney's mere assertion of authority to waive a trial de novo on behalf of his client cannot be relied upon" by opposing counsel. (*Sanker, supra*, 167 Cal.App.3d at p. 1147.)

An attorney's unauthorized act may bind his or her client if the client ratifies such action. (*Blanton, supra*, 38 Cal.3d at p. 408.) A client, however, does not necessarily ratify an attorney's unauthorized arbitration stipulation simply by allowing the arbitration to proceed to an award. (*Sanker, supra*, 167 Cal.App.3d at pp. 1145–1146 [defendant entitled to vacate adverse judicial arbitration award because he never agreed to waive right to trial de novo even though he agreed to nonbinding arbitration].) "[A]llowing a party to object to an allegedly unauthorized stipulation to binding arbitration *after* an adverse decision has been reached raises the possibility of manipulation—of withholding an objection unless and until an unfavorable decision is announced." (*Id.* at p. 1146, italics added.) "Adding a party's signature line to the stipulation is an obvious preventive measure." (*Id.* at p. 1147; see also *Levy v. Superior Court* (1995) 10 Cal.4th 578, 580 [41 Cal.Rptr.2d 878, 896 P.2d 171] [written settlement stipulation is enforceable under § 664.6 only if "signed personally by the litigant"].)

■ Because an attorney lacks apparent authority to sign an arbitration contract on his or her client's behalf, the lawyer's signature *alone* is not sufficient evidence the client consented to arbitration. A party may, of course, *expressly* authorize counsel to sign an arbitration stipulation on his or her behalf. (*CPI, supra*, 94 Cal.App.4th at p. 1174.) But " '[a]bsent express authority, it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client.' " (*Blanton, supra*, 38 Cal.3d at p. 407.)

### 3. *The Court Proceeding Here*

We turn to the case before us. Plaintiffs attached a copy of the arbitration stipulation to their initial petition to confirm the award, but not to their

---

arbitration stipulation rendered the stipulation "worthless" despite such counsel's own execution of the document. (*Id.* at p. 728.) In addition, the defendant in *Caro* "participated in the arbitration, expressly acknowledg[ed] to the arbitrator her understanding that it would be binding[, and] never personally sought to repudiate her consent. Equally important, the 'true' client (defendant's insurance carrier) agreed to binding arbitration after acknowledging its duty to defend and indemnify its insured." (*Ibid.*)

petition to confirm the corrected award. They provided or proffered no other evidence that defendants consented to arbitrate the dispute or ratified the arbitration stipulation.

This showing was insufficient to support plaintiffs' petitions. A person seeking judicial enforcement of a private arbitration award does *not* meet the burden of proving the existence of a valid arbitration contract simply by submitting a copy of the contract signed by a party's attorney rather than by the party personally. Lacking the signature of the adverse party on the contract to arbitrate, the award's proponent must provide additional substantiation of the agreement sufficient to prove by a preponderance of the evidence that the opposing party expressly authorized counsel to sign on his or her behalf, or evidence the opposing party ratified the unauthorized arbitration contract.

The court erred by granting plaintiffs' petition to confirm the award without determining whether defendants consented to or ratified the arbitration agreement. (Even if we assume the court made an implied finding to that effect, the finding was unsupported by substantial evidence.) Based on the reporter's transcript of the hearing, it does not appear the court ever considered the issue. Because the court failed to consider and rule on the question of defendants' consent, we remand the matter to the court for a hearing on the issue. (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 765 [50 Cal.Rptr.3d 700]; *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 945 [85 Cal.Rptr.3d 817]; *Loving, supra,* 33 Cal.2d at p. 615; *Lindenstadt, supra,* 55 Cal.App.4th at p. 895.)

On remand, the court must hear plaintiffs' petition to confirm the corrected award "in a summary way in the manner and upon the notice provided by law for the making and hearing of motions." (§ 1290.2.) Although "the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion" (*Rosenthal, supra,* 14 Cal.4th at pp. 413–414), where "the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination" (*id.* at p. 414). The question of a party's consent "deserve[s] a careful factual inquiry . . . ." (*Trabuco, supra,* 96 Cal.App.4th at p. 1191.)

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court for a new evidentiary hearing on plaintiffs' and defendants' petitions to confirm or vacate the arbitration award, respectively, at which the court shall determine whether defendants consented to or ratified the arbitration stipulation, i.e., whether a valid arbitration contract exists between the parties. Plaintiffs' cross-appeal is dismissed as moot. Defendants shall recover their costs on appeal.

Moore, Acting P. J., and Aronson, J., concurred.