Filed 6/7/24  Valdez v. Rick Hamm Construction, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ENRIQUE VALADEZ,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICK HAMM CONSTRUCTION, INC.,<br>et al.,<br><br>    Defendants and Appellants. | G062523<br><br>(Super. Ct. No. 30-2021-01234887)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Clark Hill, Rafael G. Nendel-Flores and Jessica Soriano for Defendants and Appellants.

Guerra & Casillas, Ruben Guerra and Tizoc Perez-Casillas for Plaintiff and Respondent.

Defendants Rick Hamm Construction, Inc. (RHC), Rick Hamm, Eric Dexter, Carlos Landin and Rick Sanchez (collectively, defendants) moved to compel arbitration based on an arbitration agreement purportedly signed by plaintiff Enrique Valadez.  Valadez, however, opposed the motion and denied his signature was on the arbitration agreement.  The trial court denied the motion, finding defendants failed to meet their burden of proving Valadez signed the arbitration agreement.

On appeal, defendants argue the trial court erred because their evidence was sufficient to establish Valadez signed the arbitration agreement.  In determining whether an arbitration agreement exists, a shifting three-step burden of production applies, but the ultimate burden of proof remains with defendants as the ones moving to compel arbitration.  On the first step, there is no dispute defendants met their burden of producing prima facie evidence of an arbitration agreement purportedly signed by Valadez.  On the second step, Valadez met his burden of producing evidence that created a factual dispute as to whether he signed the arbitration agreement.  Thus, we must move to the third step, in which the trial court found defendants failed to meet their burden of proving Valadez signed the arbitration agreement.  Under the applicable standard of review, we conclude the evidence does not compel finding as a matter of law that Valadez signed the arbitration agreement, and thus, the trial court did not err.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After Valadez, who previously worked at RHC, filed a complaint against defendants asserting multiple causes of action, defendants moved to compel arbitration. Defendants argued Valadez was provided, in December 2013, with a new employee onboarding packet, which included a document titled "Applicant's Statement and Agreement" that contained an arbitration agreement.  According to defendants, Valadez

2

signed this document. Defendants also submitted declarations from Taylor Polis and Llana Hamm,[1] as well as exhibits.

According to Polis' declaration, she was an administrative assistant for RHC from approximately September 2012 through June 2016. Polis said she was "familiar with Rick Hamm's new employee onboarding process, including providing new hires with an onboarding packet to review and sign." Polis declared, "[d]uring [her] employment with Rick Hamm, it was [her] custom and practice to ask new hires to come into the office; ask them to sit in the conference room; for [her] to go over the initial onboarding packet with them (including [RHC's] Applicant's Statement and Agreement which, in turn, contains an arbitration provision); and witness the new hire employees sign these onboarding documents." Polis further stated, "[o]n or around December 12, 2013, consistent with [her] custom and practice, [she] provided . . . Valadez . . . with the new employee onboarding packet (including [RHC's] Applicant's Statement and Agreement which, in turn, contains [the] arbitration provision)." Polis attached an exhibit, which she said was "[a] true and correct copy of the Applicant's Statement and Agreement signed by" Valadez. This exhibit is a one-page document containing multiple paragraphs, including an arbitration provision, and appears to show a hand-written signature dated December 12, 2013.

According to Llana's declaration, she is currently the treasurer and chief financial officer of RHC, held similar positions when Valadez was hired in December 2013, and is "familiar with how RHC stores employee personnel related documents and information." Llana stated, "[d]uring the relevant time period, RHC had a custom and practice of taking a photograph of new employees while they reviewed and signed new employee onboarding documents (including the Applicant's Statement and Agreement which, in turn, contained[] an arbitration provision . . . )." Attached as an exhibit was a

---

[1] As this opinion refers to Llana Hamm multiple times, and she shares the same last name with one of the defendants, this opinion refers to Llana by her first name to avoid confusion.

3

photograph, which Llana said showed Valadez "signing new employee onboarding documents with a date stamp of December 12, 2013 – the same date that [Valadez] signed his [a]rbitration [a]greement." (Italics omitted.) Also attached as an exhibit was, according to Llana, "a true and correct copy of [Valadez's] signed [a]rbitration [a]greement dated December 12, 2013 which is contained in [Valadez's] personnel file." This exhibit appears to be the same document as that attached to Polis' declaration.

Valadez opposed the motion, denying he signed the arbitration agreement and saying defendants failed to meet their burden of establishing a valid arbitration agreement. In a declaration, Valadez stated he had never seen the document containing the arbitration agreement that was attached to Polis' and Llana's declarations before his counsel showed it to him. Moreover, Valadez declared "[t]he signature on that document is not my signature, and it is not my handwriting." According to Valadez, if he "had seen the alleged arbitration agreement back when [he] was hired, [he] would have never signed it as is." Valadez further said he "never received a copy of this so-called arbitration agreement" and does not have one in his records. Valadez also attached to his declaration three documents: (1) a "Notice to Employee as to Change in Relationship," (2) his driver's license, and (3) his social security card. Using these three documents as examples of his signature, his opposition argued "[a] comparison of [his] actual signature (e.g., on his driver's license and on his social security card) with that of the signature on the alleged agreement reveals that they are so dissimilar that any layperson, without the need for a handwriting expert, can easily see they do not match."

In addition to his declaration, Valadez filed evidentiary objections. Among other things, Valadez asserted authentication objections to the document containing the arbitration agreement that was attached to Polis' and Llana's declarations.

In their reply, defendants argued they met their burden to establish the existence of a valid arbitration agreement by a preponderance of the evidence given the

4

evidence they previously submitted.  Defendants also filed evidentiary objections to Valadez's declaration and responses to Valadez's evidentiary objections.

After hearing oral argument, the trial court adopted its tentative ruling as its final ruling and denied the motion because defendants had failed to meet their burden of proving Valadez signed the arbitration agreement.  Applying a shifting three-step burden of production, the trial court found defendants had met their initial burden of presenting prima facie evidence by submitting the arbitration agreement purportedly signed by Valadez, but Valadez then shifted the burden back to defendants by challenging the authenticity of that document.  Ultimately, as the trial court explained, "[d]efendants bear the burden of proving the fundamental, threshold[] issue[] that [Valadez] actually signed the arbitration provision," and "given [his] express denial that he signed the [a]rbitration [a]greement, the [trial] [c]ourt conclude[d] that [defendants] ha[d] not met their burden of proof." [2]

The trial court detailed in its order why defendants' evidence did not convince it otherwise. [3]  It found Llana's and Polis' declarations were conclusory and failed to authenticate Valadez's signature.  For Llana's declaration, the trial court stated "[t]here are no facts in [it] to establish she has any personal knowledge of the facts asserted, particularly that the signature on the Applicant's Statement is that of [Valadez]."  For Polis' declaration, the trial court noted "Polis does not state that she followed her

---

[2]     In determining defendants had failed to meet their burden, the trial court did not rely on a comparison of Valadez's three sample signatures with the signature on the arbitration agreement.  The trial court noted the signature samples were dated January 24, 2014, May 10, 2021, and May 20, 2021, and Valadez's "signature since 2014 has clearly changed so the two later samples are not helpful."  While the trial court recognized "[t]he 2014 signature is the closest in time to when the [a]rbitration [a]greement was signed," it found "[t]here are similarities and differences in the signatures that could be due to a variety of reasons, and without expert analysis, [it] cannot determine whether [Valadez] signed the [a]rbitration [a]greement based simply on the written signature."

[3]     The parties also highlight comments made by the trial court at the oral argument hearing.  There, the trial court commented, among other things, about the competing declarations, including "[t]he burden here in some ways resolves the question for the [trial] [c]ourt, because if [the trial court] can't pick between those two, then the party with the burden loses."  The trial court further commented at the hearing "the pendulum is also affected somewhat by the fact that it isn't a declaration saying I saw him sign, faced by a declaration saying I did not sign[,]" and the "declaration by the moving parties is more attenuated."

custom and practice in going over the onboarding documents with [Valadez] and watching him sign the onboarding documents, including the [a]rbitration [a]greement, nor does she attest that she has no reason to believe she did not follow her custom and practice." The trial court further explained Polis "does not indicate whether she has a specific recollection of actually going over and/or checking the Applicant's Statement for [Valadez's] signature;" "does not indicate that she has any familiarity with [Valadez's] signature, and based on that knowledge, that the signature on the [a]rbitration [a]greement looks like [Valadez's] signature;" and "does not testify she is the custodian of records." Thus, the trial court determined Polis "fails to state, based on personal knowledge, that [Valadez] signed the Applicant's Statement" and "[h]er statement instead in effect moves from providing the onboarding packet to [Valadez] to there being a signed Applicant's Statement in his file." And for the photograph of Valadez, the trial court found it "confirms his presence, but not what was actually presented to him and/or signed by him."[4]

## DISCUSSION

On appeal, defendants argue the trial court erred in finding they failed to meet their burden of proving that Valadez signed the arbitration agreement. As the parties dispute the standard of review, we first address the shifting three-step burden of production and the applicable standards of review. Then, applying the proper standards of review, we conclude the trial court did not err.

### A. Legal Principles and Standards of Review

On a motion to compel arbitration, a "threshold question . . . is whether an agreement to arbitrate exists." (*Trinity v. Life Ins. Co. of North America* (2022) 78

---

[4] The trial court also overruled defendants' evidentiary objections and certain of Valadez's evidentiary objections, but it sustained Valadez's evidentiary objections to the document containing the arbitration agreement purportedly signed by him and certain statements in Llana's and Polis' declarations that he signed the agreement. During the oral argument hearing, the trial court noted sustaining the objections did not mean any reference to the document was excluded; instead, the trial court "simply sustained objections to those portions where the agreement as a signed document has purportedly been attached or identified."

Cal.App.5th 1111, 1120 (*Trinity*).) "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists." (*Ibid.*) For this inquiry, courts apply a shifting three-step burden of production. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).)

On the first step, "the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy.' [Citation.]" (*Gamboa, supra,* 72 Cal.App.5th at p. 165.) To meet this burden, the moving party can "'attach[] to the [motion or] petition a copy of the arbitration agreement purporting to bear the [opposing party's] signature.' [Citation.] Alternatively, the moving party can meet its burden by setting forth the agreement's provisions in the motion. [Citations.]" (*Ibid.*; see also Cal. Rules of Court, rule 3.1330.) The moving party does not need to follow the normal procedures for authenticating the document on this step. (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*).)

On the second step, "[i]f the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence – in this instance, by disputing the authenticity of [his] signature[]." (*Iyere, supra,* 87 Cal.App.5th at p. 755.) To meet this burden of production, the opposing party "must offer admissible evidence creating a factual dispute as to the authenticity of" the opposing party's signature. (*Ibid.*)

On the third step, "[i]f the opposing party meets its burden of producing evidence, . . . the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa, supra,* 72 Cal.App.5th at p. 165.) Importantly, "[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Id.* at pp. 165-166; see also *Iyere, supra,* 87 Cal.App.5th at p. 755 [moving party "retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature"].)

For the standard of review on appeal, the parties agree "'''''"[t]here is no uniform standard of review for evaluating an order denying a [motion] to compel arbitration.'''''" [Citation.]" (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811 (*Kinder*).) "'''''"[I]f the court's denial rests solely on a decision of law, then a de novo standard of review is employed.'''''" [Citations.]" (*Ibid.*) "'If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.' [Citation.]" (*Ibid.*) Here, the second and third steps are at issue on this appeal and, notably, have differing standards of review under these circumstances.

On the second step, "we review de novo the trial court's ruling that [Valadez's] evidence was sufficient to create a factual dispute shifting the burden of production back to [defendants]." (*Iyere, supra,* 87 Cal.App.5th at p. 756.)

On the third step, defendants assert the substantial evidence standard of review applies because this appeal concerns factual disputes – here, whether Valadez signed the agreement. Valadez, however, cites to *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066-1067 (*Fabian*), and asserts the inquiry is whether the trial court's finding was erroneous as a matter of law given the trial court found defendants failed to meet their burden. Although defendants are generally correct that the substantial evidence standard applies to the trial court's resolution of factual disputes, "[t]he substantial evidence standard of review takes on a unique formulation where, as here, 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals.' [Citation.]" (*In re S.G.* (2021) 71 Cal.App.5th 654, 671.) In this context, "'''''the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'''''" [Citation.]" (*Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744-745

8

(*Garcia*); see also, e.g., *Fabian, supra,* 42 Cal.App.5th at pp. 1066-1067.) Defendants criticize Valadez for relying "solely" on *Fabian* for the standard of review, but multiple cases have used this formulation when the trial court found a party moving to compel arbitration failed to carry its burden of proof. (See, e.g., *Trinity, supra,* 78 Cal.App.5th at p. 1121; *Gamboa, supra,* 72 Cal.App.5th at p. 166.)

Indeed, defendants cite *Kinder* as one of the cases supposedly supporting their position, but that case recognizes the inquiry is whether the evidence compels a finding as a matter of law when a trial court found an appellant failed to meet its burden. (*Kinder, supra,* 91 Cal.App.5th at p. 811.)

*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 544-548 & fn. 1, another case cited by defendants, applied the typical substantial evidence standard when the trial court found appellants had failed to meet their burden on a motion to compel arbitration, but it recognized some cases have applied the formulation described in *Fabian* and noted it did not need to address the appropriateness of that unique formulation because it reached the same result. The other cases cited by defendants for their argument that this unique formulation is wrong do not directly address the formulation of the substantial evidence standard when a trial court found a party failed to meet its burden of proof. (See *The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1347-1355; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217, 1222-1223; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88-92.)

**B. The Trial Court Did Not Err**

The parties do not dispute defendants met the first step of producing prima facie evidence of an arbitration agreement. Thus, the burden of production shifted to Valadez on the second step to produce evidence creating a factual dispute as to the existence of the arbitration agreement. On this step, Valadez met his burden to create a factual dispute as to the existence of the arbitration agreement by denying the signature on the document was his.

9

Defendants assert Valadez "never disputed that the [a]rbitration [a]greement produced as part of . . . Polis['] and [Llana's] declarations was not a true and correct copy of the [a]greement." This is incorrect as Valadez made authentication objections to that document in the trial court and has argued he did not sign that document. Additionally, Valadez submitted a declaration expressly stating "[t]he signature on that document is not [his] signature, and it is not [his] handwriting." Valadez's denial that it was his signature created a factual dispute as to whether Valadez signed the agreement. Defendants try to fault Valadez for not expressly denying that the arbitration agreement was part of the onboarding documents provided to him, but whether the arbitration agreement was part of the onboarding documents does not negate the factual dispute created by his denial of signing the agreement.

Moreover, defendants contend the trial court should have followed *Iyere*, but their reliance on *Iyere* is misplaced. In *Iyere*, the court held the plaintiffs failed to meet their burden of creating a factual dispute as to the authenticity of their signatures on an arbitration agreement, reversing the trial court's decision. (*Iyere, supra,* 87 Cal.App.5th at pp. 756-759.) While the plaintiffs asserted they did not recall signing the arbitration agreement, the court underscored "no plaintiff declared that he had *not* signed the agreement, or that his physical signature was forged or inauthentic." (*Id.* at p. 756.) Further, the plaintiffs' declarations "explicitly acknowledge[d] that plaintiffs signed a 'stack of documents' and d[id] not deny that the stack included the agreement." (*Ibid.*) The court reasoned, "[i]f a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed." (*Id.* at p. 758.) Here, Valadez did what the plaintiffs in *Iyere* did not: he declared the signature on the document was not his. *Iyere* does not help defendants.

10

Turning to the third step, defendants focus on the supposedly substantial evidence they produced, arguing "the [t]rial [c]ourt erred when it discounted [defendants'] substantial evidence and, instead, accepted [Valadez's] self-serving declaration." As an initial matter, this argument reverses the standard of review. If defendants had prevailed in the trial court, the inquiry would look to whether substantial evidence supported that finding. But defendants lost in the trial court, and "[w]e must not review the evidence to determine whether substantial evidence supports the losing party's version of the evidence." (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 818.) Instead, as discussed above, the inquiry on this appeal is whether the evidence *compels* a finding in favor of defendants as a matter of law. We conclude it does not.

Defendants point to Polis' declaration, Llana's declaration, and the photograph of Valadez. This evidence, however, is not uncontradicted evidence "'""""of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"'" [Citation.]" (*Garcia, supra,* 58 Cal.App.5th at pp. 744-745.) Valadez declared the signature on the arbitration agreement is not his signature nor his handwriting, which contradicts defendants' evidence as to whether Valadez signed the agreement.[5] Moreover, defendants' evidence is not as definitive as they suggest. As the trial court correctly noted, "[t]he photograph of [Valadez] confirms his presence, but not what was actually presented to him and/or signed by him," and Llana's declaration failed to establish facts that she has personal knowledge the signature on the arbitration agreement is Valadez's. While Polis' declaration described her custom and practice and said she provided to Valadez the new employee onboarding packet including the arbitration agreement, the trial court correctly noted Polis' declaration did

---

[5] As discussed above, the trial court did not rely on a comparison, without expert analysis, of the signature on the arbitration agreement to the three signature examples submitted by Valadez in determining whether Valadez signed the agreement. Given the trial court's analysis regarding the signature examples, we similarly do not rely on the signature examples in affirming the trial court.

11

not state she, consistent with her custom and practice, went over the onboarding packet with Valadez and witnessed him sign the documents.[6]

Finally, defendants contend the trial court's decision was inconsistent with public policy favoring arbitration by purportedly disregarding their substantial evidence and accepting Valadez's "self-serving" evidence. "Although '[p]ublic policy favors contractual arbitration as a means of resolving disputes . . . that policy ""does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."""" [Citation.]" (*Gamboa, supra,* 72 Cal.App.5th at p. 166.) Put another way, on the threshold question of whether Valadez signed the agreement, public policy does not require the trial court to give greater weight to defendants' evidence over Valadez's evidence.[7]

---

[6] Defendants also argue the only additional evidence they could have provided would be a witness who saw Valadez sign the document but case law does not require such evidence. To be clear, we are not opining a party moving to compel arbitration must present such evidence to prevail when a plaintiff denies signing the agreement, nor do we need to speculate under what circumstances a court should grant a motion to compel without such evidence.

[7] In the trial court, Valadez also argued the arbitration agreement was procedurally and substantively unconscionable. The trial court did not reach this argument, and Valadez does not raise it on appeal. However, we note this argument because defendants contend Valadez's "procedural unconscionability argument is an admission that he did in fact receive and review the [a]greement." We disagree. Valadez argued in the trial court, "even if [the trial] [c]ourt were to somehow find [Valadez] did sign the agreement, [d]efendants' motion must still be denied because the agreement is unconscionable[.]" Valadez's unconscionability argument was not an admission to signing the agreement; it was a fallback position, an alternative argument if the trial court found against Valadez on the threshold signature issue. It did not, so the argument is simply irrelevant to our holding.

12

**DISPOSITION**

The order denying defendants' motion to compel arbitration is affirmed. Respondent shall recover his costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.