Filed 9/24/21  Valdez v. Tesla CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| BRANDON VALDEZ,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TESLA, INC. et al.,<br><br>        Defendants and Appellants. | A160610, A160922<br><br>(Alameda County<br>Super. Ct. No. RG20049344) |

When plaintiff Brandon Valdez brought this employment discrimination action against his former employer, Tesla, Inc. (Tesla), and his supervisor Caleb Moore, defendants moved to compel arbitration, contending Valdez electronically signed an arbitration agreement when he accepted his job offer.  The trial court denied their motions on the ground defendants did not establish the authenticity of the electronic signature.  We conclude that the trial court misapplied the shifting burdens applicable to motions to compel arbitration and reverse the orders.

### FACTUAL AND PROCEDURAL BACKGROUND

Valdez began working for Tesla on October 2, 2016.  Valdez brought this action against Tesla and Moore on January 7, 2020, alleging that Tesla wrongfully terminated his employment and failed to accommodate a

1

disability, that it discriminated against him, and that Moore made false and defamatory statements regarding Valdez's absence from work.

Tesla moved to compel arbitration and dismiss the action or stay the proceedings, contending Valdez was bound by an agreement to arbitrate he signed electronically before his employment began, and Moore filed a demurrer or, in the alternative, motion to compel arbitration incorporating by reference Tesla's argument. In support of the motion, Tesla provided a declaration by Willette Dimaya, who was a project specialist in Tesla's recruiting operations department.

Dimaya averred as follows: In connection with her position at Tesla, she was familiar with its hiring procedures and employment policies and practices. Dimaya oversaw the applicant tracking and onboarding system Tesla used until fall 2018 for its non-managerial employees, known as the "Taleo" system. She was "familiar with and [had] personal knowledge regarding how Tesla's applicant tracking systems and onboarding systems operate and, generally, how the data in those systems is electronically stored." With appropriate permissions she could view applicants' Taleo history, and she caused all relevant documents from Valdez's Taleo history, which were attached to her declaration, to be printed.

According to Dimaya, in 2016 Tesla required all applicants for non-managerial, hourly positions to apply through Taleo. Taleo required the applicant to create an account on the "Tesla Careers" website with first and last name, email address, and phone number and to create a unique username and password known only to the applicant before continuing with the application. On September 23, 2016, Valdez submitted an online job application for a production associate position using this system, and he provided personal information, including his home address, email address,

2

and work history.  Tesla sent Valdez an email three days later using the email address he provided when he completed his application; the email contained a link to an employment offer letter.  Valdez had to log into his account using his unique username and password to open the link.  The offer letter contained an agreement to arbitrate all claims arising out of his employment.  In order to accept and electronically sign his offer for employment, Valdez was again prompted to enter his first and last name, email address, and password.  According to Taleo's records as Dimaya interpreted them, Valdez electronically signed the offer letter containing the arbitration provision.  Valdez began working for Tesla a few days later.

Dimaya's declaration attached in exhibit A a copy of a September 26, 2016 email from Tesla to Valdez extending an offer of employment and informing him he could view and sign the offer letter by following a link in the email.  Exhibit B to the declaration is a seven-page document.  Each of the first six pages notes, at the bottom, a page number out of six (e.g., Page 1 of 6).  The first four pages of the document are comprised of the offer letter containing the arbitration provision, with blank lines for signature and date on the fourth page.  The fifth and sixth pages are a notice to the employee with wage and workers' compensation information with a signature line and a notation that the employee's signature "merely constitutes acknowledgement of receipt."  The seventh and final page of the document, which states, "Powered by Taleo," has a header stating, "Electronic Signature" and numbering the page "7 of 7."  This page has a "Password Verified" box that is checked; states, after the word "Name," "Brandon Valdez"; bears the date September 26, 2016; and includes a long alphanumeric code identified as the "Signature ID."  That same code appears in a one-line header across the top of each of the first six pages, along with

the words "Accepted offer," Valdez's name, a date the document was "Esigned," and a notation with the page number out of seven (e.g., "Page: 1 of 7").

In his brief opposing Tesla's motion to compel arbitration, Valdez argued that Tesla could not show he signed an agreement to arbitrate, that he in fact did not do so, and that there was "no evidence of what the screens presented to Mr. Valdez even said before he allegedly clicked a button for an electronic signature." He contended there was "no evidence that the electronic signature offered by [Tesla] even corresponds to the offer letter at all" or that he was required to provide his account information and unique password in order to sign the agreement electronically. However, Valdez did not submit a declaration stating he did not sign, or did not recall signing, the agreement, nor any other *evidence* that the purported electronic signature was invalid.

On May 28, 2020, the trial court denied Tesla's motion to compel arbitration, finding it had not met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. According to the court, Dimaya's declaration did not set forth an adequate foundation to support a reasonable inference she was personally familiar with the security features of the Taleo system, and there was no indication she was directly involved with Valdez's hiring. The court noted in its order that it had issued a tentative ruling granting Tesla the opportunity to conduct limited discovery on Valdez's allegation that he did not sign an arbitration agreement, but that Tesla opposed the tentative ruling on the ground it had already submitted sufficient evidence of an agreement to arbitrate.

The trial court did not rule immediately on Moore's demurrer and motion to compel arbitration, but rather granted him leave to conduct limited

4

discovery regarding Valdez's claim that he did not sign the arbitration agreement, and it said Moore should submit at least one declaration regarding the security features of the Taleo system. There is no indication Moore did so. On August 19, 2020, the court overruled Moore's demurrer and denied his motion to compel arbitration.

Tesla and Moore filed timely appeals of the trial court's orders, and we consolidated the appeals for purposes of oral argument and decision. Valdez does not dispute that, if the arbitration agreement is valid, Moore is also entitled to its benefit.

## DISCUSSION

### I.    Legal Framework

In California, the " '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 236.) Although public policy favors arbitration, that policy " ' " 'does not extend to those who are not parties to an arbitration agreement.' " ' " (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057 (*Espejo*).)

We review an order denying a motion to compel arbitration for abuse of discretion unless the matter presents a pure question of law, in which case our review is de novo. (*Espejo*, *supra*, 246 Cal.App.4th at pp. 1056–1057.) To the extent the court's decision is based on disputed facts, we review the decision for substantial evidence. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71.) As we shall explain, a pivotal question in this case is whether Valdez was required to submit evidence that he did not electronically sign the purported arbitration agreement in order to counter a properly presented motion to compel arbitration. This presents a legal

5

question, subject to our de novo review. (See *Espejo*, at p. 1057 [whether defendants had to present evidence to authenticate arbitration agreement is legal question].)

When a party has filed a petition to compel arbitration, the trial court must determine in a summary proceeding whether an "agreement to arbitrate the controversy exists." (Code Civ. Proc., §§ 1281.2, 1290.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412–413.) In that proceeding, "[b]ecause the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement—either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation [citations]—that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." (*Rosenthal*, at p. 413; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

This inquiry is made through a three-step process involving shifting burdens. In the first step, a party seeking to compel arbitration must state verbatim the arbitration provisions in the alleged agreement or provide a copy physically or electronically. (Cal. Rules of Court, Rule 3.1330; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 (*Condee*).) The movant "may meet [its] *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." (*Espejo*, *supra*, 246 Cal.App.4th at p. 1060; accord, *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067 (*Fabian*) [party "met its initial burden to show an agreement to arbitrate by attaching a copy of the Contract to its petition, which purportedly bears

6

[plaintiff's] electronic initials and signature"]; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 710 [same].)  At this initial stage "*it is not necessary to follow the normal procedures of document authentication*"; instead, a party filing a motion to compel arbitration "need only allege the *existence* of an agreement and support the allegation as provided in rule 371 [now California Rules of Court, rule 3.1330]." (*Condee*, at pp. 218–219, italics added to first quote.)

If the moving party meets this initial burden to show an agreement to arbitrate purportedly signed by the opposing party, then, in the second step, the burden shifts to the opposing party to show the agreement is false or invalid, for instance by challenging the validity of an electronic signature. (*Condee*, *supra*, 88 Cal.App.4th at p. 219; *Fabian*, *supra*, 42 Cal.App.5th at p. 1067; *Espejo*, *supra*, 246 Cal.App.4th at p. 1060.)  We will discuss this prong of the test in greater detail below.

Third, if the opposing party meets this burden, the moving party must then prove by a preponderance of the evidence that the signature was authentic.  (*Fabian*, *supra*, 42 Cal.App.5th at p. 1067; *Espejo*, *supra*, 246 Cal.App.4th at p. 1060.)  Where the issue is the authenticity of an electronic signature, this burden is " 'not great' " and may be carried " 'in any manner,' including by presenting evidence of the contents of the contract in question and the circumstances surrounding the contract's execution." (*Fabian*, at pp. 1067–1068; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844 (*Ruiz*); Civ. Code., § 1633.9, subd. (a) [electronic signature is attributed to a person if it is the act of the person]; Evid. Code., § 1400 [authentication of writing].)

Valdez suggests that *Condee*'s three-part burden-shifting approach has been undermined by *Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*).  The

court in *Toal*, in considering a challenge to a judgment confirming an arbitration award, concluded that a party did not meet its burden to prove the existence of a valid arbitration agreement simply by submitting a copy of the contract signed by the opposing party's attorney rather than by the party personally. (*Id*. at pp. 1213, 1223.) In the course of setting out the governing law, the court explained that *Rosenthal* requires the petitioner to establish the existence of an arbitration agreement by a preponderance of the evidence; in a footnote, the *Toal* court said that to the extent the burden-shifting approach found in *Condee* conflicts with *Rosenthal*, the Supreme Court decision is controlling. (*Toal*, at p. 1219 & fn. 8.)

The court in *Espejo* considered and rejected a contention that this portion of *Toal* " 'called into doubt' " *Condee*'s approach, explaining, "In context, the brief discussion of *Condee* by the court in *Toal* regarding a petitioner's ultimate burden has no bearing on the question before us— whether defendants may meet their *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature. We conclude they may, in compliance with the requirements of section 1281.2 and California Rules of Court, rule 3.1330." (*Espejo*, *supra*, 246 Cal.App.4th at pp. 1059–1060.) We agree with *Espejo* that the burden-shifting approach of *Condee* and its progeny does not conflict with *Rosenthal*'s requirement that the party seeking arbitration establish the existence of an arbitration agreement.

## II. Analysis

As our discussion has shown, a party's initial burden in moving to compel arbitration is not great, and Tesla met it by attaching a copy of what purports to be the electronically signed agreement to its petition. (*Espejo*, *supra*, 246 Cal.App.4th at p. 1060; *Fabian*, *supra*, 42 Cal.App.5th at p. 1067.)

8

The trial court, however, appears to have ignored the burden-shifting analysis the governing authorities set forth; instead, it decided *as an initial matter* that defendants failed to authenticate Valdez's signature and denied the motions on that basis, rather than considering whether Valdez adequately challenged the electronic signature so as to shift to defendants the burden of authenticating the agreement. This, we conclude, was error under the rule that authentication at the *initial* step of the process is unnecessary. (*Condee*, *supra*, 88 Cal.App.4th at p. 219.)

Our inquiry thus moves to whether Valdez met his burden to challenge the authenticity of the purported agreement. Valdez contends he was required to do no more than point to the lack of a handwritten signature and what he characterizes as the inadequacy of the evidence submitted by Tesla to show the electronic signature was authentic. In effect, this challenge is to the adequacy of defendant's initial showing. But we have concluded that under the correct legal standards, defendants met their initial burden by attaching the arbitration agreement purportedly signed electronically by Valdez.

The weakness in Valdez's position is that he submitted no *evidence* he did not electronically sign the offer letter that contained the arbitration clause. He points to no authority, and our own research has disclosed none, in which a party opposing arbitration on this ground has been held to meet his burden without providing, at a minimum, a declaration under penalty of perjury stating he or she did not sign or does not recall signing the agreement. Rather, courts have consistently relied on a declaration contesting signature in some form as an evidentiary basis for a finding that the signature is not valid.

In *Ruiz*, relied upon by the trial court for its conclusion that Tesla did not provide facts to support an inference that only the plaintiff could have logged on to the human resources system and signed an arbitration agreement, the plaintiff averred in a declaration that he did not recall signing the arbitration agreement and would not have done so if presented with it. (*Ruiz*, *supra*, 232 Cal.App.4th at p. 840.) It was in this context that *Ruiz* explained, "[p]roperly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged." (*Id*. at p. 846, citing *Condee*, *supra*, 88 Cal.App.4th at pp. 218–219.) The court went on to explain that "[i]*n the face of Ruiz's failure to recall signing the 2011 agreement*, Moss Bros. had the burden of proving by a preponderance that the evidence that the electronic signature was authentic [citation], that is, it was what Moss Bros. claimed it was: 'the act of' Ruiz." (*Ruiz*, at p. 846, italics added.) *Ruiz* does not establish that, once an initial showing of a signed arbitration agreement has been made, a party opposing arbitration may shift the burden to authenticate a signature without an iota of evidence that the signature is invalid.

We are not aware of any cases that shift the burden back to the moving party without *some* evidence tending to show that the signature is not authentic. Our colleagues in Division Five of this court recently affirmed a trial court order denying a petition to compel arbitration on the ground an employer did not properly authenticate an electronic signature, but there the employee provided a declaration and other evidence showing she never reviewed or signed the arbitration agreement. (*Bannister v. Marinidence Opco*, *LLC* (2021) 64 Cal.App.5th 541, 543–544, 546–547.) Similarly, in

10

*Espejo*, the defendants had the burden to authenticate an electronic signature on an arbitration agreement *after* the plaintiff provided a declaration stating he did not recall signing an arbitration agreement, that his normal practice was to review documents before he signed them, and that he therefore believed he would not have signed the agreement one minute after signing an employment contract. (*Espejo*, *supra*, 246 Cal.App.4th at pp. 1054, 1060; accord, *Fabian*, *supra*, 42 Cal.App.5th at pp. 1065, 1067 [because plaintiff declared she did not sign contract, defendant had burden to prove electronic signature was authentic]; see also *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 793–794 ["merely contest[ing] the sufficiency of [defendant's] preliminary evidentiary showing" was not a "challenge [to] the truth of [defendant's] claim that each class member signed an arbitration provision"].)

A party opposing arbitration does not face a high bar. If a person can state under penalty of perjury either that he or she did not sign the agreement or that he or she does not recall doing so and would not have done so under the circumstances, that is sufficient. (See, e.g., *Fabian*, *supra*, 42 Cal.App.5th at pp. 1065, 1067; *Espejo*, *supra*, 246 Cal.App.4th at pp. 1054, 1060; *Ruiz*, *supra*, 232 Cal.App.4th at p. 840.) In electing not to provide such a declaration or other evidence, Valdez failed to meet his burden to show that the validity of the electronic signature was contested and, as a result, did not shift to defendants the burden to prove its authenticity.

In reaching this conclusion, we do not suggest a party opposing arbitration may never prevail by pointing out the insufficiency of the moving party's evidence of an agreement to arbitrate. (See *Toal*, *supra*, 178 Cal.App.4th at pp. 1219, fn. 8 & 1223 [existence of valid arbitration contract is not shown by agreement signed by party's attorney rather than party].)

But Valdez has made no such showing. He argued through counsel below that he did not physically sign the offer letter and that there is no evidence showing what he did to complete the application or that the electronic signature corresponded to the offer letter. But Tesla's email to Valdez presented him with an offer to be signed online, rather than physically, and that offer unquestionably contained an arbitration provision. Dimaya's declaration attaches and explains an offer letter that appears to have been sent to, and acknowledged with an electronic signature by, Valdez. Tesla and Moore thus carried their initial burden to make a prima facie showing of a signed agreement, and in the absence of any contrary evidence from Valdez, defendants are not required to authenticate his signature. We need not decide whether, *if* Valdez had submitted evidence contesting that he signed the offer letter, defendants' evidence would have sufficed to establish the electronic signature's authenticity. (See *Fabian*, *supra*, 42 Cal.App.5th at p. 1067.) Our analysis terminates with step two of the three-step process. We conclude the trial court erred as a matter of law in denying the motions to compel arbitration on the ground defendants did not show Valdez's signature was authentic.

## III.    Other Issues

In the trial court, Valdez also challenged the arbitration agreement as uncertain and unconscionable. The trial court did not reach these issues, and Valdez does not argue on appeal that we should affirm the orders on this basis. We accordingly do not consider them, but nothing we say is intended to prevent the trial court from doing so on remand. (See *Condee*, *supra*, 88 Cal.App.4th at p. 219.) Indeed, counsel for Tesla acknowledged at oral argument that remand to allow the court to address these other issues was proper. She also contended, and we agree, that Valdez is not entitled to a

second attempt on remand to contest the authenticity of his electronic signature, since existing law required a non-moving party to introduce evidence in order to contest the authenticity of an arbitration agreement, once the moving party had met its initial burden. (See, e.g., *Espejo*, *supra*, 246 Cal.App.4th at p. 1060; *Fabian*, *supra*, 42 Cal.App.5th at p. 1067.)

Finally, we disregard Valdez's citation to an unpublished case of Division Five of this court, *Vaughn v. Tesla, Inc.* (May 21, 2019, A15475) [nonpub. opn]. The issue in *Vaughn* is different from the one before us here, and the collateral estoppel exception to the general rule that parties may not cite or rely on unpublished cases does not apply. (Cal. Rules of Court, rule 8.1115(b)(1).)

## DISPOSITION

The orders denying defendants' motions to compel arbitration are reversed and the case is remanded for further proceedings in conformity with this opinion. In the interests of justice all parties shall bear their own costs on appeal.

_____
TUCHER, J.*

WE CONCUR:

_____
POLLAK, P. J.

_____
BROWN, J.

*Valdez v. Tesla, Inc. et al.* (A160610, A160922)

---

\* Presiding Justice of the Court of Appeal, Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.